IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Santander Bank, N.A., | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Case No: 2:19-cv-00088-DSM |
| | § | |
| Empyrean Auto Group, LLC, | § | |
| Basin Subaru, LLC, Ronald J. | § | |
| Lillard, and Pete Martinez, Jr., | § | |
| | § | |
|    Defendants. | § | |

**PLAINTIFF SANTANDER BANK, N.A.'S
MOTION FOR FINAL SUMMARY JUDGMENT**

Stephanie H. Cook
S.D. No. 396487
State Bar No. 24013071
COKINOS | YOUNG
Las Cimas IV
900 S. Capital of Texas Highway, Suite 425
Austin, Texas 78746
(512) 476-1198 (Direct)
(512) 610-1184 (Fax)
scook@cokinoslaw.com

**ATTORNEY-IN CHARGE FOR
PLAINTIFF SANTANDER BANK, N.A.**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **Santander Bank, N.A.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Case No: 2:19-cv-00088-DSM |
| | § | |
| **Empyrean Auto Group, LLC,** | § | |
| **Basin Subaru, LLC, Ronald J.** | § | |
| **Lillard, and Pete Martinez, Jr.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF SANTANDER BANK, N.A.'S,**
**MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff, Santander Bank, N.A. ("Santander"), files its Motion for Final Summary Judgment under Federal Rule of Civil Procedure 56, and would respectfully show the Court as follows:

**A.    INTRODUCTION**

1.    Santander filed its First Amended Complaint on May 13, 2019, asserting a claim for outstanding amounts owed under a financing agreement provided to Defendants, Empyrean Auto Group, LLC ("Empyrean") and Basin Subaru, LLC ("Basin").  *See* Doc. 11, at §D. Empyrean and Basin are owned by Defendants, Ronald J. Lillard ("Lillard") and Pete Martinez, Jr. ("Martinez").  *Id.*  As part of the financing agreement, both Lillard and Martinez entered into personal guarantees for the business debts of Empyrean and Basin. *Id.*   Empyrean and Basin defaulted under the financing agreement with Santander.  *Id.*

1

2. Defendants filed their First Amended Joint Counterclaims on August 1, 2019, asserting counterclaims against Santander for breach of contract and tortious interference with Defendants' other and prospective business relations. *See* Doc. 25, at §D.

3. Santander files this motion for final summary judgment on 1) its claim for amounts outstanding, and 2) Defendants' counterclaims for breach of contract and tortious interference. Summary judgment should be granted because the summary-judgment evidence establishes all elements of Santander's claim, and establishes that Defendants cannot maintain their causes of action as a matter of law.

### B. STATEMENT OF UNDISPUTED FACTS

4. This lawsuit arises from Defendants' default in connection with financing provided by the lender, Santander. On or about October 3, 2017, Defendants Empyrean and Basin (together, "Borrowers"), as co-makers, executed and entered into a Floorplan Financing and Security Agreement, together with all additional agreements, and other documents executed relating thereto (collectively the "Financing Agreement" or "Indebtedness") in favor of Santander. *See* Affidavit of John O'Gorman, attached hereto as Exhibit 1, at ¶5; Financing Agreement, attached hereto as Exhibit 1-A. The Financing Agreement is cross-collateralized and personally guaranteed by Defendants, Lillard and Martinez. *See* Exhibit 1, at ¶5; Lillard Guaranty Agreement, attached hereto as Exhibit 1-G; Martinez Guaranty Agreement, attached hereto as Exhibit 1-H. Lillard signed the Financing Agreement for Empyrean and Basin. *See* Exhibit 1-A.

5. The type of secured lending arrangement provided for in the Financing Agreement is called "floor-plan financing," in which a lender makes a specific advance to enable an automobile dealer to purchase a specific motor vehicle that the dealership will then market to retail customers. Exhibit 1-A, at pp. 1-3.

6. Under the floor-plan financing provided for in the Financing Agreement, Borrowers promise to hold the inventory financed by Santander in trust until such time as the inventory is sold, lost, stolen, destroyed, or payment becomes due. Upon sale of the vehicles, Borrowers promise to remit to Santander the wholesale invoice price financed by the lender to service the lending arrangement. *Id.*

7. In exchange for Santander's agreement to finance Borrowers' acquisition of vehicles, Borrowers granted Santander a security interest in certain collateral owned by Borrowers, as described in the Financing Agreement, including, virtually all of their tangible and intangible personal property. *See* Exhibit 1-A, at § 2.1. Specifically, Borrowers granted a security interest to Santander in:

> "[a]ll present and future property and rights of Dealer[s] in and to: (a) all inventory, including without limitation, all new and used motor vehicle, motorcycle, all terrain vehicle, scooter, power sport vehicle and parts Inventory, and further including without limitation, all inventory on order, but not yet delivered to Dealer[s], and all consigned goods, and all motor vehicles and other goods held for short or long term rental or lease and for use as so-called demonstrator vehicle and service loaner/shop rental vehicle; (b) all accounts, contract rights, chattel paper, electronic chattel paper, instruments, documents, promissory notes, and supporting obligations; and all rights and benefits under any agreement for an interest rate swap, forward rate, cap, floor, or collar, or the like, to the full extent assignable; (c) all payment intangibles and all rights to receive payment, credits, and other compensation, including without limitation, so-called "factory credits" and "open account" payments and holdbacks, incentive payments, stock rebates, allowances from any manufacturer, distributor, or supplier of motor vehicles or motorcycles, or from any of their subsidiaries or affiliates; (d) all general intangibles, franchise rights and rights under sales and service agreements, books, records, files, computer disks, software, involving or emanating from Dealer[s]'s business or assets, including without limitation, all manufacturer's statements of origin; (e) all investment property; (f) all payments and credits and accounts that Lender may owe to Dealer[s], and all funds of Dealer[s] that Lender may have or retain in its possession, whether in the form of cash collateral, reserve, contingency, escrow accounts to the extent of Dealer[s]'s interest, deposit accounts, operating accounts, or otherwise; (g) all deposit and other accounts in and with all other banks and depositories; (h) all equipment, including without limitation, all furniture, machinery, tools; (i) all fixtures; and (j) all additions, substitutions, replacements, accessories, attachments and accessions to, and all proceeds of the foregoing and

3

>     of proceeds, including all motor vehicles, motorcycles and other goods received in trade, claims, and tort recoveries, insurance proceeds, refunds of insurance premiums, proceeds derived from Dealer[s]'s sale or assignment of chattel paper, and all cash and other funds held in all deposit accounts in which proceeds may be deposited" (all of the foregoing, the "Collateral")."

*Id.*

8. Santander filed a UCC-1 financing statement to perfect its security interest in Basin's Collateral with the Texas Secretary of State on September 25, 2017, Filing No. 17-0032462005. *See* Exhibit 1, at ¶5; Basin UCC Financing Statement, attached hereto as Exhibit 1-B. Santander filed a UCC-1 financing statement to perfect its security interest in Empyrean's Collateral with the Texas Secretary of State on September 25, 2017, Filing No. 17-0032462126. *See* Exhibit 1, at ¶5; Empyrean UCC Financing Statement, attached hereto as Exhibit 1-C.

9. The Financing Agreement contains certain covenants and requirements of Borrowers. In accordance with the Financing Agreement, Borrowers agreed to pay the principal amount of the obligations owed to Santander on each item of inventory financed by Santander upon the sale of such item by Borrowers to their retail customers. *See* Exhibit 1-A, at §2.9. Essentially, once a car was sold to a retail customer, Borrowers then were required to remit the principal amount owed to Santander for that particular vehicle. Failure to pay such principal amount constitutes a default under the Financing Agreement. *See* Exhibit 1-A, at §7.1.

10. Under the plain and unambiguous language of the Financing Agreement, Borrowers are further obligated to pay Santander interest. *See* Exhibit 1-A, at §1.5. Failure to pay such interest constitutes a default under the Financing Agreement. *See* Exhibit 1-A, at §7.1.

11. Under the terms of the Financing Agreement, Borrowers are liable to Santander for all costs, expenses, and attorneys' fees incurred by Santander in connection with enforcing the terms of the Financing Agreement. *See* Exhibit 1-A, at §8.4.

4

12. On or about July 31, 2018, Santander notified Borrowers, Lillard and Martinez that Borrowers had defaulted under the terms of the Financing Agreement by failing to remit payment to Santander. *See* Exhibit 1, at ¶¶ 5&7; July 31, 2018 Notice Letter, attached hereto as Exhibit 1-D. Santander also notified Borrowers, Lillard and Martinez that interest would be charged pursuant to the default rate of 5% per annum greater than the otherwise applicable rate under the Financing Agreement. *See* Exhibit 1-D, at ¶3. Following the July 31, 2018 Notice Letter, Borrowers failed to remit payments to Santander for the vehicles sold out of trust. *See* Exhibit 1, at ¶¶7-10.

13. On or about August 10, 2018, Santander notified Borrowers, Lillard and Martinez that because Borrowers had failed to cure the default, Santander, pursuant to the Financing Agreement, was accelerating the loan balance. *See* Exhibit 1, at ¶5; August 10, 2018 Notice Letter, attached hereto as Exhibit 1-E, at ¶4. Santander demanded immediate payment of the outstanding indebtedness as of August 10, 2018, in the principal amount of $17,895,964.61, plus accrued but unpaid interest in the amount of $148,760.06, together with attorneys' fees, expenses, and costs of collection as permitted by the Financing Agreement. *Id.* Thereafter the indebtedness values have been minimally reduced. Following the August 10, 2018 Notice Letter, Borrowers made nominal payments, but did not remit the total outstanding balance due and owing. *See* Exhibit 1, at ¶9.

14. On or about August 20, 2018, Santander demanded payment in full of the entire aggregate amount of advances outstanding under the Financing Agreement, plus accrued but unpaid interest, together with attorneys' fees, expenses, and costs of collection as permitted by law and the Financing Agreement. *See* Exhibit 1, at ¶5; August 20, 2018 Notice Letter, attached hereto as Exhibit 1-F.

15. Despite Santander's repeated demands, Borrowers, Lillard and Martinez have

failed to meet their obligations under the Financing Agreement and Guarantee Agreements and the outstanding indebtedness remains unpaid.

16. As of March 2, 2020, after acceleration and not including attorney's fees and costs, the outstanding indebtedness exceeds $10,618,387.30.

### C. SUMMARY JUDGMENT EVIDENCE

17. In support of its Motion, Santander includes evidence in the attached appendix, which is incorporated by reference into the motion. The motion for summary judgment is based on the following evidence:

| | |
|---|---|
| **Exhibit 1** | Affidavit of John O'Gorman |
| **Exhibit 1-A** | Financing Agreement |
| **Exhibit 1-B** | Basin UCC Financing Statement |
| **Exhibit 1-C** | Empyrean UCC Financing Statement |
| **Exhibit 1-D** | July 31, 2018 Notice Letter |
| **Exhibit 1-E** | August 10, 2018 Notice Letter |
| **Exhibit 1-F** | August 20, 2018 Notice Letter |
| **Exhibit 1-G** | Lillard Guaranty Agreement |
| **Exhibit 1-H** | Martinez Guaranty Agreement |
| **Exhibit 2** | Defendants' First Amended Joint Counterclaims Against Santander Bank, N.A. |
| **Exhibit 3** | First Amended Agreed Scheduling Order |
| **Exhibit 4** | Defendants' Joint Disclosure of Expert Witnesses |

### D. ARGUMENT AND AUTHORITIES

**1.** *Summary Judgment Standard*

18. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). "[A] movant for summary judgment need not support its motion with evidence negating the opponent's case. Rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden shifts to the non-movant to make a sufficient showing establishing each element as to which that party will have the burden of proof at trial." *Royal Surplus Lines Ins. Co.*

*v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. Exxonmobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

19. The undisputed facts and summary judgment evidence show that there is no genuine issue of material fact as to Santander's claim for amounts outstanding under the Financing Agreement, and thus summary judgment is proper.

20. With respect to Defendants' Counterclaims, there is an absence of evidence supporting Defendants' causes of action, and thus summary judgment is proper.

### 2. *Santander is Entitled to Summary Judgment for Amounts Due and Owing Pursuant to the Financing Agreement and Guarantee Agreements.*

21. Santander is entitled to summary judgment as a matter of law because the undisputed facts and evidence establish each element of Santander's claim against Defendants. Federal Courts have recognized that "suits on promissory notes provide fit grist for the summary judgment mill." *F.D.I.C. v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1253 (5th Cir. 1992).

22. In order to recover under the Financing Agreement and the guaranties of Martinez and Lillard, Santander must show: (1) that Defendants signed the notes and the guaranty agreements; (2) that Santander is the present owner or holder of the notes and the guaranty

agreements; and (3) the notes are in default. *Id.* at 1254; *see also Vaughn v. DAP Fin. Servs., Inc.* 982 S.W.2d 1, 4 (Tex. App.-Houston [1st Dist.] 1997, no pet.).

23. The evidence indisputably demonstrates that Defendants signed the Agreement and Guarantee Agreements. Signatures on behalf of Empyrean and Basin are affixed to the Financing Agreement. *See* Exhibit 1-A, at p. 23. The signatures of Lillard and Martinez are affixed to their respective Guarantee Agreements. *See* Exhibits 1-G and 1-H.

24. The evidence clearly shows that Santander is the present owner of the notes and guarantee agreements. *See* Exhibit 1, at ¶5; Exhibit 1-A, at pp. 1, 23. The Financing Agreement identifies Santander as the lender, is signed by Santander and is verified to be a true and correct record kept in the ordinary course of business by a Senior Vice President of Santander. *Id.* The Guarantee Agreements identify Santander as the lender and are verified to be a true and correct record kept in the ordinary course of business by a Senior Vice President of Santander. *See* Exhibit 1, at ¶5; Exhibit 1-G; Exhibit 1-H.

25. The evidence establishes that Defendants defaulted under the terms of the Financing Agreement. As discussed at length *supra,* Borrowers failed to remit payments to Santander for vehicles sold out of trust. *See* Exhibit 1, at ¶¶ 7, 9. Borrowers failed to pay interest to Santander. *See* Exhibit 1, at ¶ 9. Borrowers' failures constitute default under the Financing Agreement. *See* Exhibit 1-A, at §§1.5, 2.9, 7.1.

26. Despite numerous demands, Defendants have failed to uphold their obligations under the Financing Agreement and Guarantee Agreements. The amount due and owing is as follows:

Empyrean Auto Group, LLC

Principal: $6,537,239.96
Interest: $1,261,350.15 (through 2/28/20)

8

Total: $7,798,590.11, subject to additional per diem interest as permitted under the Indebtedness.

Basin Subaru, LLC

Principal: $2,282,486.24
Interest: $537,310.99   (through 2/28/20)
Total: $2,819,797.23, subject to additional per diem interest as permitted under the Indebtedness.

*See* Exhibit 1, at ¶9.  Additionally, Santander is also entitled to reimbursement of its fees and expenses under the Indebtedness.

Empyrean Auto Group, LLC  $692,890.90

Basin Subaru, LLC  $439,344.08

Such fees represent the reasonable and ordinary fees for key keepers, audit of inventory, and cash audit fees permissible under the Indebtedness that Santander incurred in the ordinary course of business.  Exhibit 1, at ¶10; Exhibit 1-A, at §2.11. These fees are expressly permitted in an Event of Default.  *Id.*  Santander has met its burden and proved each element of its claim, and as such, is entitled to summary judgment.

### 3. *Defendants Cannot Maintain Their Claim for Breach of Contract Against Santander.*

27. Defendants have no evidence to support any claim against Santander.  "In Texas, the elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach."  *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016).  "It is a well-established rule that "a party to a contract who is himself in default cannot maintain a suit for its breach."  *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). Texas courts have held that plaintiffs who are in default of their

9

payment obligations, cannot maintain a cause of action for breach of contract. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016).

28.     Defendants, in their capacity as Counter-Plaintiffs, cannot maintain their action for Breach of Contract against Santander, as the evidence proves they failed to perform their obligations under the Financing Agreement. As discussed at length *supra*, Defendants defaulted on their obligations pursuant to the Financing Agreement. *See* Exhibit 1, at ¶¶8, 9, 10, and 11; Exhibit 1-A, at §§1.5, 2.9, 7.1. Notably, Defendants, in their Counterclaim, fail to plead that they performed their obligations under the Financing Agreement. *See* Doc. 25, attached hereto as Exhibit 2, at §§C, D.

29.     Defendants also cannot establish that Santander breached the terms of the Financing Agreement. Defendants primary contention, purportedly supporting their claim for breach of contract, is that Key Keepers (sent by Santander to various dealerships after Defendants breached the Financing Agreement) essentially interfered with Defendants' business and that Defendants were required to pay for the Key Keepers' services. *See* Exhibit 2, at §§C, D. Defendants do not dispute that Santander had the right to send Key Keepers to their businesses, and in highlighting the contract provision that allowed Santander to take these actions, validate Santander's actions. *See* Exhibit 2, at ¶14; s*ee also*, Exhibit 1-A, at §2.11. The provision of the Financing Agreement, which Defendants cite, allows Santander to send Key Keepers to the dealerships to (a) enter the dealerships; (b) take possession/control over certificates of origin, title and keys for vehicles; (c) take possession of books and records; (d) receive payment for proceeds; and (e) take whatever additional actions Santander may deem necessary. *Id.* The provision further states that the Key Keepers have no fiduciary duty to Defendants and that Defendants will pay for the Key Keepers' services. *Id.* The applicable contract provision gives Santander, via Key Keepers, the rights to

10

take the very actions of which Defendants complain about. Defendants provide only conclusory statements that these alleged actions constitute a breach of contract, but do not point to any contract provision, or other evidence, which substantiates their claim. Nor have Defendants offered any evidence of damages.

30. Defendants have shown no "damages" arising from Santander's alleged breach of contract. Defendants make conclusory statements regarding claimed damages, stating that the Key Keepers cost an unreasonable amount of money, harmed Defendants reputation, reduced employee morale, obstructed business activities and caused sales to drop. *See* Exhibit 2, at ¶28. Defendants, however, have failed to provide any competent evidence to substantiate their claimed opinions. Under the First Amended Agreed Scheduling Order, the deadline to designate experts and written reports by all parties seeking relief was December 3, 2019. *See* Doc. 28, attached hereto as Exhibit 3, at ¶3. On December 3, 2019, Defendants served Defendants' Joint Disclosure of Expert Witnesses. *See* Defendants' Joint Disclosure of Expert Witnesses, attached hereto as Exhibit 4. Apart from listing Defendants attorneys to testify regarding attorneys' fees, Defendants Expert Disclosure only name Defendants, Martinez and Lillard, as non-retained experts. *Id.*, at Exhibit "A." Defendants' Expert Disclosure contains no written report and no facts and opinions to which the witness are expected to testify. *Id.* This disclosure does not comport to the requirements of Federal Rules of Civil Procedure Rule 26(2)(B) and (C). Defendants have no evidence of damages and no expert to provide testimony regarding their claimed damages. As such, their claims fail as a matter of law.

31. Defendants cannot maintain their cause of action for breach of contract as they cannot prove their performance or tender of performance, cannot prove that Santander breached

11

the Financing Agreement and cannot prove damages. Accordingly, Santander is entitled to summary judgment with respect to Defendants' breach of contract counterclaim.

### 4. *Defendants Cannot Maintain Their Claim for Tortious Interference with Defendants' Other and Prospective Business Relations Against Santander.*

32. Even more specious is the alleged tortious interference claim asserted by Defendants. "The elements of tortious interference with a prospective business relationship are that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 214 (5th Cir. 2018).

33. The required elements for Defendants to prove their cause of action are simply not present in this case. Defendants claim that the Key Keepers interfered with Defendants' business by: a) disclosing to a purchaser of a dealership that Defendants were selling vehicles out of trust; b) failing to give titles to vehicles after sales were funded; c) misfiling title registrations; and d) accusing dealership personnel of breaking into a title box. *See* Exhibit 2, at §D, Count 2, ¶33. Defendants claim that the above referenced actions led to damages including: a reduction in the sale price of a dealership, low employee morale, employees quitting their jobs and interference with sales. *Id*. at ¶34.

34. Notably, Defendants fail to plead a specific instance in which the Key Keepers' alleged actions prevented a business relation from moving forward. With respect to the sale of the dealership (which Santander maintains was unauthorized pursuant to the terms of the Financing

Agreement), Defendants pleadings note that the sale actually went forward and was not in fact prevented. *Id*. at ¶¶33 and 34.

35.     Further, Defendants' contention is that the Key Keepers disclosed factual information that Defendants were "selling vehicles out of trust," factual information that Defendants do not dispute. *Id.* Similarly, with respect to the allegations regarding failing to provide titles, misfiling registrations and making accusations of dealership personnel, Defendants fail to articulate how, or even if, these alleged actions prevented any business relation from moving forward. *Id.* Defendants' contention that the Key Keepers alleged actions were done willfully and intentionally to interfere with Defendants' business is conclusory and Defendants offer no evidence to support their contention. *Id*. at ¶32.

36.     The evidence also fails to show that the Key Keepers' actions proximately caused injury and damages. Defendants' counterclaim merely makes conclusory statements, but fails to establish evidence to support proximate cause and damages. *See* Exhibit 2, at §D, Count 2. As noted *supra*, Defendants have not properly disclosed experts or provided any written reports to support their claim for damages. *See* Exhibit 4.

37.     Therefore, Defendants cannot maintain their cause of action for tortious interference with Defendants' other and prospective business relations as they cannot prove that Santander prevented a business relation, cannot prove that Santander's alleged actions were done willfully and intentionally, cannot prove proximate cause and cannot prove damages. Accordingly, Santander is entitled to summary judgment with respect to Defendants' cause of action for tortious interference with Defendants' other and prospective business relations.

### E.    ATTORNEYS FEES

38. Santander is entitled to its attorney fees incurred in prosecuting this suit under Tex. Civ. Prac. & Rem. Code § 38.001. The Texas legislature has enacted a statutory scheme that allows a court to take judicial notice of the "usual and customary attorney's fee" without receiving further evidence, and those usual and customary fees are presumed to be "reasonable" for purposes of Section 38.001, unless the presumption is rebutted. *Id.* at §§ 38.003, 38.004. Courts at all levels have approved awards of attorney's fees pursuant to Chapter 38, with no requirement of presentment of evidence, on the basis of the provisions of Sections 38.003 and 38.004. *See e.g., Am. Home Assur. Co. v. United Space All., LLC,* 378 F.3d 482, 490 (5th Cir. 2004); *Suncoast Post-Tension, Ltd. v. Scoppa,* 4:13-CV-3125, 2015 WL 9703521, at *3 (S.D. Tex. Dec. 11, 2015); *Gill Savings Association v. Chair King, Inc.,* 797 S.W.2d 31 (Tex. 1990); and *Ross v. 3D Tower Ltd.,* 824 S.W.2d 270, 273 (Tex. App.—Houston [14th Dist.] 1992, no writ).

39. Santander asks the Court to take judicial notice of the usual and customary attorney fees in this District. Santander further asks the Court to find that reasonable attorney fees and costs (as of February 28, 2020) in this matter are $173,640.62, as reflected in the attached affidavit of Santander's lead attorney-in-charge, Stephanie H. Cook. Exhibit 5, attached hereto and incorporated herein by reference. Additional fees will be incurred to prepare for and attend any hearing on this Motion and counsel will supplement the affidavit with additional fees and expenses, redacted.

### F.    CONCLUSION

40. Santander has established that no genuine issue of material fact exists on its claim for outstanding amounts under the Financing Agreement and is entitled to summary judgment on its claim.

41. Defendants cannot maintain their causes of action for breach of contract and for tortious interference with Defendants' other and prospective business relations, and as such, Santander is entitled to summary judgment on Defendants' counterclaims.

## PRAYER

WHEREFORE, Plaintiff, Santander Bank, N.A., respectfully prays that this Honorable Court grant its motion for summary judgment under Federal Rule of Civil Procedure 56 with respect to its claims, and the counterclaims brought by Defendants; order that Defendants pay Santander the amounts due and owing under the Financing Agreement, order that Defendants take nothing on their claims, and grant Santander its usual and customary attorney fees, and all other relief to which it is justly entitled, both at law, in equity, or otherwise.

Dated this 2nd day of March, 2020.

Respectfully submitted,

COKINOS | YOUNG

Las Cimas IV
900 S. Capital of Texas Highway
Suite 425
Austin, Texas 78746
(512) 476-1198 (Direct)
(512) 610-1184 (Fax)

By: /s/ Stephanie H. Cook
STEPHANIE H. COOK
Attorney in Charge
S.D. No. 396487
State Bar No. 24013071
scook@cokinoslaw.com

**ATTORNEYS FOR PLAINTIFF**
**SANTANDER BANK, N.A.**

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the fore going document was served upon the counsel of record listed below by the Southern District of Texas ECF method or by certified mail, return receipt requested on the 3 day of March, 2020.

                  /s/ Stephanie H. Cook
                  Stephanie H. Cook