# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SANTANDER BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>EMPYREAN AUTO GROUP, LLC, BASIN SUBARU, LLC, CAH-DHL AUTOMOTIVE, LLC, RONALD J. LILLARD, PETE MARTINEZ, JR., PMRL INVESTMENTS, LLC, HICKS FAMILY SUBARU, LLC, AND J.P. MORGAN CHASE<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:19-cv-00088-DSM |

**AFFIDAVIT OF JOHN P. O'GORMAN**

"I, John P. O'Gorman, first being duly sworn, on oath states:

1. I am a resident of New Jersey, am over the age of eighteen (18) years of age, and am fully competent to make this affidavit. I make this affidavit of my own personal knowledge except for those assertions made upon information and belief as to which I have been informed and believe them to be true. I could, if called as a witness, testify competently to each fact set forth herein.

2. I am a Senior Vice President of Santander Bank, N.A. ("Santander"), and am employed as a commercial workout officer. My office address is: Santander Bank, N.A., 200 Park Avenue, Suite 100, Florham Park, NJ 07932.

3. As a part of my duties at Santander, I am responsible for the loan account maintained by Santander with respect to Empyrean Auto Group, LLC and Basin Subaru, LLC (collectively called, "Borrowers"). Upon information and belief, all recording or tracking of payments and other transactions relating to that loan account was made at or near the time of

the occurrence by a person with knowledge of the transaction, and all records referred to in this Affidavit relating to this account were kept in the ordinary course of the business of Santander and as a regular practice of Santander.

4.      Santander maintains, in the ordinary course of its business, electronically imaged loan documents and other records for all its accounts.  Upon information and belief, these computerized documents and records are originally created at or around the time in which a particular deal is finalized.  As part of Santander's regular business activities, an employee of Santander, with the business duty to do so accurately, either with personal knowledge of the terms of the loan or lease or through information transmitted by such a person, enters the key terms and conditions into Santander's computer system.  An Electronic account for Borrowers was set up by Santander pursuant to regular business practice.  The electronic account of Borrowers was created in the ordinary course of Santander's business and as a regular activity and that the information in that account was entered at or near the time the agreement was entered into, by a person or persons with personal knowledge of the agreement or through information transmitted by such a person.

5.      Upon information and belief, the documents attached as Exhibits A-H, to my affidavit, were all made at or near the time of which they are dated, and these documents were promptly digitized into Santander's computer system, where they are indexed and stored. Santander maintains the following documents in the ordinary course of business and as a regular practice of Santander:

    a.      The Financing Agreement between Santander and Borrowers, dated
    October 3, 2017 (the "Indebtedness").  A true and correct copy of the Indebtedness
    is attached to this affidavit as Exhibit 1-A.

b. Santander filed a UCC-1 financing statement to perfect its security interest in Basin's Collateral with the Texas Secretary of State on September 25, 2017, Filing No. 17-0032462005. *See* Exhibit 1-B.

c. Santander filed a UCC-1 financing statement to perfect its security interest in Empyrean's Collateral with the Texas Secretary of State on September 25, 2017, Filing No. 17-0032462126. *See* Exhibit 1-C.

d. On or about July 31, 2018, Santander notified Borrowers by mail that Borrowers had defaulted under the terms of the Indebtedness by failing to remit payment to Santander. Santander notified Borrowers that interest would be charged pursuant to the default rate of 5%, as permitted by the Indebtedness. *See* Exhibit 1-D.

e. On or about August 10, 2018, Santander notified Borrowers by mail that because Borrowers had failed to cure the default, Santander, pursuant to the Indebtedness, was accelerating the loan balance. Santander demanded immediate payment of the outstanding indebtedness in the principal amount of $17,895,964.61, plus accrued but unpaid interest in the amount of $148,760.06, together with attorneys' fees, expenses, and costs of collection as permitted by the Indebtedness. *See* Exhibit 1-E.

f. On to about August 20, 2018, Santander notified Borrowers by Certified Mail Return Receipt Requested, United States Regular Mail and electronic mail that Borrowers had failed to cure the default. *See* Exhibit 1-F.

g. On or about October 3, 2017, Lillard signed a written unlimited guaranty of all of the obligations of Empire and Basin to Santander. A true and accurate copy of Lillard's guaranty is annexed hereto as Exhibit 1-G.

h. On or about October 3, 2017, Martinez signed a written unlimited guaranty of all of the obligations of Empire and Basin to Santander. A true and accurate copy of Martinez' guaranty is annexed hereto as Exhibit 1-H.

The Default

6. Santander also maintains electronic records of bills issued for each account and payments made on each account. Santander maintains these payment records in the ordinary course of their business and as a regular practice. Upon information and belief, each entry on the electronic accounts of Borrowers were made either automatically by Santander's computer system, or by an employee of Santander, at or near the time the occurrence of the event, prompting the entry of data into Santander's computer system as part of the ordinary course of Santander's businesses and kept in the course of regularly conducted activity and as a regular practice of Santander.

7. According to Santander's books and records, Borrowers have failed to make all payments due under the Indebtedness since June 21, 2018.

8. Pursuant to the terms of the Indebtedness, the entire amounts due thereunder have been accelerated by letter dated August 10, 2018. Ex. 1-E.

9. According to Santander's books and records, the amounts due and owing, as of March 2, 2020, after acceleration and not including attorneys' fees and costs, totaled, as per the Indebtedness

Empyrean Auto Group, LLC

Principal: $6,537,239.96
Interest: $1,261,350.15 (through 2/28/20)
Total: $7,798,590.11, subject to additional per diem interest as permitted under the Indebtedness.

Basin Subaru, LLC

Principal:    $2,282,486.24
Interest:    $537,310.99    (through 2/28/20)
Total:    $2,819,797.23, subject to additional per diem interest as permitted under the
Indebtedness.

10.    Under the Indebtedness, Borrowers are obligated to pay the attorneys' fees and
costs, and fees for representatives for protecting collateral, incurred by Santander in the
enforcement of its rights thereunder, including this lawsuit. Costs and fees relating to Santander's
representatives are as follows:

Empyrean Auto Group, LLC $692,890.90

Basin Subaru, LLC $439,344.08

Such fees represent the reasonable and ordinary fees for key keepers, audit of inventory, and cash
audit fees permissible under the Indebtedness that Santander incurred in the ordinary course of
business.

11.    Santander has also incurred attorneys' fees, which are recoverable under the terms
of the Indebtedness. Santander retained Stephanie Cook as the attorney representing Santander.
Santander has incurred the following legal fees and costs as of February 28, 2020, $173,640.62.

12.    Santander has performed any and all conditions and obligations required of it under
the Indebtedness."

FURTHER AFFIANT SAYETH NOT.

John P. O'Gorman

SWORN TO AND SUBSCRIBED before me on this the 2nd day of March, 2020.

Notary Public, State of New Jersey

SHELLENE MAHARAJ
Notary Public
State of New Jersey
My Commission Expires Sept. 24, 2024
I.D.# 50112827

# EXHIBIT 1-A

## FLOORPLAN FINANCING AND SECURITY AGREEMENT

This FLOORPLAN FINANCING AND SECURITY AGREEMENT (including any addenda attached hereto, this "Agreement") is entered into as of 10-3-17, 2017 between **EMPYREAN AUTO GROUP LLC,** a Texas Limited Liability Company with an address of 3615 S. Padre Island Dr., Corpus Christi, TX 78415 and **BASIN SUBARU, LLC,** a Texas Limited Liability Company with an address of 2800 W. Wall Street, Midland, Texas 79703 jointly and severally (individually and collectively, "Dealer") and **SANTANDER BANK, N.A.,** a national association with an address of 75 State Street, Boston, Massachusetts 02109, together with its successors and assigns ("Lender"). Certain terms with initial capitalization are defined in Section 9.1 hereof.

The parties agree as follows:

### 1. THE LOANS.

1.1 Advances. Dealer may request advances ("Advances") for the acquisition of specific Vehicles, and Lender, in its sole discretion, may make such Advances (the "Floorplan Facility"). Lender's right to decline to make an Advance is a material term of the Floorplan Facility and may not be waived, suspended or altered except in a writing signed by it specifically referring to this clause. Lender may at any time, in its sole discretion, establish, rescind or change amounts, limits or the extent to which Advances may be requested by or extended to Dealer.

1.2 Outstanding Balances. Lender's internal records shall constitute presumptive evidence of the then outstanding principal balance(s) of all Advances as well as the amount of interest, fees and charges that may be owed to Lender at any time. Absent manifest error, any statement ("Account Statement") sent or made available online to Dealer showing the principal balance shall constitute conclusive evidence thereof unless objected to in writing within fourteen (14) days of the date thereof.

1.3 Authorized Persons; Manufacturer's and Seller's Request. Lender may rely conclusively on any borrowing request made by the President, Treasurer, any Vice President, or the General Manager of Dealer (all of such persons determined by reference to Lender's records) or any other person duly authorized by a general borrowing resolution of Dealer. Any such request may be made either orally or otherwise, but Lender at its option may require that all requests be in writing. Dealer authorizes Lender to permit Approved Manufacturers or Approved Auctions to request Advances directly, and agrees that any draft by or request for an Advance by Approved Manufacturers or Approved Auctions shall constitute an authorized request by Dealer regardless of Dealer's knowledge thereof. Any Advance made by Lender in good faith shall be binding on Dealer in acting upon any request referred to herein which Lender believes in good faith to have been made by an authorized person or persons.

1.4 Funding. Lender may make Advance proceeds available by credit to any deposit account of Dealer with Lender, or may be paid to Dealer or may be applied to any Obligations, as Lender may in each instance elect. Lender additionally may elect to fund Advances directly to the manufacturer, vendor, distributor, supplier or auction house of Financed Vehicles related thereto.

1.5 Interest, Default Rate, Late Charge.

(a) Dealer shall pay, and hereby promises to pay, interest on the Advances outstanding from time to time at the rates, at the times, and calculated in the manner determined

by Lender from time to time. Until otherwise provided by Lender, interest shall be payable monthly and shall be at the rate per annum set forth in the Terms Schedule previously or concurrently provided to Dealer (the "Initial Terms Schedule," which term shall apply to the most recent Terms Schedule in the event more than one has been provided to Dealer). Interest shall be calculated on the basis of actual number of days elapsed in a 360-day year, unless otherwise indicated by Lender. Changes in the interest rate applicable to the Advances (other than adjustments due to changes in an index rate or adjustments due to an Event of Default or demand for payment) shall be effective on sixty (60) days notice. Notice may be made in an Account Statement and shall be effective on the effective date thereof.

(b) If pursuant to the terms hereof, Dealer is at any time obligated to pay interest on the principal balance of the Advances or any Obligation at a rate in excess of the maximum interest rate permitted by applicable law for the loans described herein, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder or, if required by law, shall be returned to Dealer.

(c) Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the lesser of (i) the aggregate of five percent (5.00%) plus the rate otherwise applicable; or (ii) the maximum interest rate permitted by law, effective immediately on Lender's election.

(d) If any payment due hereunder is unpaid for twenty (20) days or more, Dealer shall pay, in addition to any other sums due hereunder (and without limiting Lender's other remedies on account thereof), a late charge equal to five percent (5.00%) of such unpaid amount.

1.6 Floorplan Principal Payments.

(a) All outstanding Advances are payable ON SIXTY (60) DAYS WRITTEN DEMAND prior to an Event of Default, and immediately ON DEMAND after an Event of Default.

(b) Prior to demand, Dealer shall repay, and hereby promises to repay, Advances with respect to unsold Financed Vehicles ("Curtailment Payments") in the amounts and at the times specified by Lender from time to time. Until otherwise provided by Lender, Curtailment Payments shall be in the amounts, and due at the times, set forth in the Initial Terms Schedule. Changes in the amounts and timing of Curtailment Payments shall be effective on sixty (60) days notice. Notice may be made in an Account Statement and shall be effective on the effective date thereof.

(c) For purposes of this Section, "Disposition" shall mean Dealer's sale, lease, exchange, trade, or any other disposition of any Financed Vehicle. Lender may at any time require that Dealer pay the Amount Financed with respect to a Financed Vehicle immediately upon the Disposition, and prior to the release or delivery, of such Financed Vehicle. Nonetheless, if Lender has not requested such immediate payment, Dealer shall be allowed a period of time after a Disposition (a "Release Period") to pay the related Amount Financed. Any Release Period shall not apply to the loss or destruction of a Financed Vehicle, and the related Amount Financed shall be due and payable immediately after such loss or destruction. The initial Release Period, if any, is set forth on the Initial Terms Schedule. The Release Period is subject to change or revocation at any time, on notice to Dealer, and is automatically terminated,

without notice, upon the occurrence of an Event of Default. Any payment of an Amount Financed shall be made in such amount regardless of whether the proceeds received by Dealer are in cash or in kind or are less than the Amount Financed.

1.7 Floorplan Limit, Overadvances. From time to time, Lender may establish limits on the maximum outstanding aggregate Advances (any such limit, the "Floorplan Limit"), and if at any time the outstanding aggregate balance of Advances is at or above the Floorplan Limit, Dealer shall not request further Advances. Lender may also establish sublimits by brand of Vehicle, between New Vehicles and Used Vehicles, and otherwise. The initial Floorplan Limit and any such initial sublimits are set forth on the Initial Terms Schedule. Any Floorplan Limit or sublimit is subject to change by Lender at any time with notice to Dealer. Lender may make Advances in excess of the Floorplan Limit, in Lender's sole discretion and all such excess Advances shall be "Advances" subject to the terms hereof, provided however, all Advances in excess of the Floorplan Limit shall be payable on demand, without regard to or benefit of the (conditional) sixty (60) day period provided by Section 1.6(a). Lender's failure to demand payment of any overadvance shall not prejudice Lender's rights to demand payment of such overadvance or any other overadvance, at any time.

1.8 Advance Rates, Used Vehicle Standards. It is Lender's present intention to make Advances at the advance rates set forth in the Initial Terms Schedule and on such other terms and conditions that Lender generally applies to other automotive floorplan borrowers from time to time, including standards for Used Vehicles financed hereunder. Lender may from time to time change such advance rates and standards, effective immediately upon notice to Dealer. Without limitation of any other provisions hereof, Lender may condition its funding of Advances on Dealer's delivery to Lender of whatever documents Lender may request (including certificates of title and/or any documentation evidencing payoff of trade-in liens), in form and detail satisfactory to Lender.

1.9 Floorplan Source. Dealer covenants and agrees that it will finance motor vehicle inventory only with Lender, unless otherwise agreed to by the Lender and provided Dealer discloses the floorplan source on the Disclosure Schedule.

1.10 Servicing. Dealer acknowledges that the Advances and/or any other Obligation may be serviced by any party designated by and on behalf of Lender.

1.11 No Implied Covenant. Dealer and Lender expressly agree that due to the demand and discretionary nature of the Floorplan Facility, no covenant of good faith and fair dealing shall apply to the lending relationship between Dealer and Lender.

## 2. SECURITY

2.1 Grant of Security Interest. In consideration hereof, Dealer hereby grants to Lender a security interest in, a lien on, and pledge and assignment of all of its now owned and hereafter acquired or created tangible and intangible personal property, to wit:

> All present and future property and rights of Dealer in and to: (a) all inventory, including without limitation, all new and used motor vehicle, motorcycle, all terrain vehicle, scooter, power sport vehicle and parts Inventory, and further including without limitation, all inventory on order, but not yet delivered to Dealer, and all consigned goods, and all motor vehicles and other goods held for short or long term rental or lease and for use as so-called demonstrator vehicle and

EXHIBIT 1-A

I

service loaner/shop rental vehicle; (b) all accounts, contract rights, chattel paper, electronic chattel paper, instruments, documents, promissory notes, and supporting obligations; and all rights and benefits under any agreement for an interest rate swap, forward rate, cap, floor, or collar, or the like, to the full extent assignable; (c) all payment intangibles and all rights to receive payment, credits, and other compensation, including without limitation, so-called "factory credits" and "open account" payments and holdbacks, incentive payments, stock rebates, allowances from any manufacturer, distributor, or supplier of motor vehicles or motorcycles, or from any of their subsidiaries or affiliates; (d) all general intangibles, franchise rights and rights under sales and service agreements, books, records, files, computer disks, software, involving or emanating from Dealer's business or assets, including without limitation, all manufacturer's statements of origin; (e) all investment property; (f) all payments and credits and accounts that Lender may owe to Dealer, and all funds of Dealer that Lender may have or retain in its possession, whether in the form of cash collateral, reserve, contingency, escrow accounts to the extent of Dealer's interest, deposit accounts, operating accounts, or otherwise; (g) all deposit and other accounts in and with all other banks and depositories; (h) all equipment, including without limitation, all furniture, machinery, tools; (i) all fixtures; and (j) all additions, substitutions, replacements, accessories, attachments and accessions to, and all proceeds of the foregoing and of proceeds, including all motor vehicles, motorcycles and other goods received in trade, claims, and tort recoveries, insurance proceeds, refunds of insurance premiums, proceeds derived from Dealer's sale or assignment of chattel paper, and all cash and other funds held in all deposit accounts in which proceeds may be deposited (all of the foregoing, the "Collateral").

The security interest granted by this Agreement is given to and shall be held by Lender as security for the payment and performance of all Obligations, including, without limitation, all amounts due under any guaranty previously, concurrently, or hereafter executed by Dealer, and shall continue even if at any time there shall be no amounts outstanding, until payment and performance of all Obligations or until terminated in a writing signed by an authorized officer of Lender.

2.2 Perfection. Dealer authorizes Lender to file whatever financing statements and other documents and to take whatever additional actions Lender deems to be necessary or appropriate to perfect and continue perfection, and to give notice of Lender's security interest, including a filing indicating as collateral "all assets," all at Dealer's expense, and ratifies any prior filing or action. Without limitation of the generality of the foregoing (a) to the extent that any of the Collateral is comprised of deposit accounts or investment property not in Lender's possession, Dealer shall, upon the request of Lender (i) provide to Lender all consents, control agreements, and other agreements or instruments from third parties that are desirable or required by Lender to perfect Lender's security interest in such Collateral, and (ii) take all other actions, and obtain, execute and deliver such documents and instruments, as are desired or required by Lender to perfect Lender's security interest in such Collateral and give Lender control (as defined in the Code) of such Collateral; (b) to the extent that any of the Collateral is comprised of electronic chattel paper, Dealer will ensure that (i) there is only one identifiable authoritative copy of the electronic chattel paper record, (ii) the authoritative electronic chattel paper record for all electronic chattel paper in which Lender has a security interest will identify Lender as the first

lien-holder, (iii) the authoritative electronic chattel paper record for all electronic chattel paper in which Lender has a security interest will be transferred to and maintained by Lender or a third party custodian designated by Lender, and (iv) changes or additions to the electronic chattel paper may not be made without the consent of Lender; and (c) to the extent that any of the Collateral is comprised of types of Collateral that can be perfected by possession, or by either possession or filing, all such Collateral shall be delivered to Lender.

2.3 Motor Vehicle Titles. Without limiting the generality of Section 2.2 hereof, at any time, with or without cause, Lender may require Dealer to deliver to Lender, or to Lender's designee, the manufacturer's statement of origin or other certificate of origin and any original certificate of title or registration with respect to each Vehicle, regardless of whether such Vehicle is a Financed Vehicle. Lender may retain physical possession of such certificates (at Dealer's premises or, at Lender's election, offsite to the extent not prohibited by law) until such time as the particular Vehicle has been sold in the Ordinary Course of Business, and except to the extent that a Release Period applies, Dealer has paid to Lender the Amount Financed with respect thereto or, if an Event of Default shall have occurred, regardless of whether the Vehicle is a Financed Vehicle, the greater of the Amount Financed or the proceeds of the sale thereof.

2.4 First Priority Security Interest. Unless Lender otherwise agrees in writing, Lender has and will continue to have a first priority security interest in all of the Collateral except that Lender's security interest in certain items of fixtures and equipment may be subject to purchase money security interests permitted hereunder.

2.5 Motor Vehicle Inventory Runs. Dealer shall deliver to Lender, immediately on request of Lender, a complete and current list of all Vehicle Inventory, identifying each Vehicle in inventory or owned by it, including non-Financed Vehicles, its location, its mileage, whether it is subject to any trade-in or other lien, the date of Dealer's acquisition thereof, the price paid therefor, and whether Dealer holds clear title.

2.6 Use and Titling of Vehicles.

(a) Dealer will not use any Financed Vehicle or other Vehicle Inventory for any purposes other than offering for sale or lease, except as permitted under subsection (b) below. Dealer will not register, license, or title any Financed Vehicle or other Vehicle Inventory, except as permitted under subsection (c) below.

(b) Dealer may permit its senior managers, and other individuals designated by them, to use Vehicles for such purposes as Dealer determines appropriate, so long as: (i) no Default shall have occurred; (ii) monthly, and at any other time immediately on request of Lender, Dealer provides Lender with the identity of any such Vehicles so used and the respective users thereof; (iii) on two business days notice, all such Vehicles shall be present on Dealer's premises, for inspection by Lender's representatives; (iv) such Vehicles are insured and such Vehicle use is within the coverage of Dealer's property and casualty policies, and (v) such Vehicle use is not inconsistent with practices of other motor vehicle dealers in Dealer's general market areas. Dealer's right to use Vehicles for such purpose may be revoked by Lender at any time as to Financed Vehicles and at any time after an Event of Default as to other Vehicles.

(c) In any event, Dealer will immediately notify Lender should Dealer apply for or obtain a certificate of title or registration (other than in connection with sales or leases in the Ordinary Course of Business) with respect to any Vehicle, including without limitation, vehicles

intended for short term rentals and service loaners. Dealer shall sign and deliver whatever additional documents as may be necessary and proper in Lender's sole discretion to maintain perfection of Lender's security rights and interest with respect to each such Vehicle.

2.7 Sales of Motor Vehicles and other Collateral. Dealer shall not, without Lender's prior written consent, sell, lease, assign, transfer, convey, option, mortgage or grant any type of security interest in or with respect to any item of Collateral, provided however, so long as no Event of Default exists, and subject to the terms, conditions and payments of and required hereby:

(i) Dealer may sell or lease Vehicles, parts and other inventory to bona fide third party purchasers and lessees in the Ordinary Course of Business from its premises or other premises that have approved in writing by Lender, for fair market value.

(ii) Dealer may sell chattel paper that constitutes proceeds of the sale of a motor vehicle under clause (i) to finance companies for cash or its equivalent in the Ordinary Course of Business, so long as such cash or equivalent is paid to Lender in accordance with the terms hereof.

(iii) Dealer may grant (purchase money) security interests in specific items of equipment other than Vehicles, acquired by it after the date hereof, so long as the lien thereof does not attach to any property other than that financed, nor secure more than the purchase price thereof.

2.8 Lodging of Assignment. At any time after demand or if Lender believes that a Default may have occurred, without notice to Dealer, Lender may notify any or all Dealer's account debtors and other payment obligors (including manufacturers, auction houses and buyers of chattel paper) of the security interest granted to Lender hereby, and direct such person(s) to make payment of amounts on which Lender has a security interest, including so-called "factory credits" and "open accounts" directly to Lender. Dealer unconditionally and irrevocably authorizes and instructs each of its account debtors and payment obligors, including each Approved Manufacturer, to make payment directly to Lender or as instructed by Lender. Lender may collect such payments and apply such amounts to the then outstanding Advances in such manner as Lender determines appropriate.

2.9 Collateral Proceeds; Trust. Dealer shall promptly pay-over and deliver Lender all proceeds, less any amounts that may be retained by Dealer as provided in the last sentence of this Section, derived from the sale or lease of Financed Vehicles or the sale of Chattel Paper, or in any way derived from any other Collateral. Upon the sale or lease of a Financed Vehicle in whole or partial consideration for a (trade-in) vehicle or motorcycle from the buyer or lessee, then, except to the extent that Lender agrees to make an Advance with respect to such trade-in, Dealer shall promptly pay to Lender an additional amount equal to the trade-in allowance or credit granted to the buyer or lessee of each purchased or leased vehicle (less any amounts that may be retained by Dealer as provided in the last sentence of this Section), which amount shall represent substitute Collateral proceeds. At any time, with or without cause, Lender may require that Dealer pay-over and deliver to Lender, proceeds in the form received, including third-party checks received by Dealer in connection with sales of Inventory, or arising out of sales of chattel paper. In any event, any proceeds received by Dealer, whether in the form of checks, drafts, credit card drafts, or otherwise shall be the property of Lender, and at all times while Dealer may hold such proceeds, Dealer shall do so "in trust" for and on behalf of Lender. Dealer and Lender

intend and agree that there shall be a true trust relationship between Dealer and Lender, with Dealer assuming full fiduciary duties, responsibilities, and obligations to and in favor of Lender. Provided however, so long as no Event of Default has occurred, Dealer may retain for working capital the excess of: (i) the proceeds received from the sale, lease or other disposition of a Financed Vehicle, over (ii) the Amount Financed with respect thereto.

2.10 Proceeds Account. At any time, Lender may, in its sole discretion, require Dealer to deposit the proceeds of all Vehicle sales and leases, of all sales of Vehicle installment sale contracts and lease contract, and of all proceeds of all Collateral in an account containing only such proceeds (a "Proceeds Account"). At any time, Lender may require that the Proceeds Account be either (i) with Lender; or (ii) with a bank acceptable to Lender and subject to a control agreement acceptable to Lender. At any time after Default or after demand (without regard to the sixty (60) day provisional period for payment), Lender may restrict Dealer's withdrawals from the Proceeds Account and take whatever action it deems appropriate to require that all amounts in the Proceeds Account are, in Lender's sole discretion: (a) applied to the Advances or other Obligations; (b) retained as cash collateral: (c) released to Dealer: or (d) any combination of the above as Lender may determine appropriate; but prior to an Event of Default, any proceeds of a Financed Vehicle shall be first applied to the Amount Financed with respect thereto.

2.11 Representative. At any time, with notice to Dealer if prior to Default, Lender may designate a representative to take one or more of the following actions: (a) to enter any locations where Dealer conducts business or maintains collateral, and to remain on premises for such time as Lender may deem desirable; (b) to take possession and control over certificates of origin and title and keys with respect to each Vehicle comprising part of Dealer's inventory; (c) to take constructive or actual possession over all documents, books, records (including electronic records), papers, accounts, chattel paper, electronic chattel paper, instruments, promissory notes, general intangibles, payment intangibles, supporting obligations, contract rights, software or any similar types of tangible or intangible property relating to or comprising part of the Collateral; (d) to receive payment of all Collateral proceeds; and/or (e) to take whatever additional actions Lender may deem necessary or desirable to protect and preserve the Collateral, and to carry out, and to protect and preserve Lender's security rights and remedies. The representative need not be independent, and may be an officer or employee, of Lender. The representative shall have no fiduciary duty or obligation to Dealer or to any other person other than Lender. Dealer shall fully cooperate with the representative and shall provide the representative with such offices and other facilities on Dealer's Premises as Lender may reasonably request. After any Default, Dealer shall pay the reasonable fees of the representative (including charges for Lender employees). Lender's appointment of a representative shall not impair or in any way prejudice the rights of Lender to exercise any of its rights and remedies otherwise available.

2.12 Power of Attorney. Dealer shall execute such Powers of Attorney empowering Lender to deal with vehicle titles and such other matters relating hereto as Lender may request.

2.13 Real Estate Interests. At Lender's request, Dealer shall assign its rights in each lease or other agreement pursuant to which it possesses, occupies or uses any real property or interest therein; and shall obtain from the owner thereof, and if requested by Lender, from any mortgagee thereof, (i) a consent to such assignment, and (ii) an agreement that Lender may occupy such property, to effect the purposes of this Agreement, on such terms as Lender deems acceptable. Dealer's Landlord is properly identified on part 3.4 of the Disclosure Schedule attached hereto.

2.14 Guaranties. The payment and performance of all Obligations shall be unconditionally guaranteed at all times by those persons and entities identified from time to time by Lender, including, initially, the persons and entities listed on the Initial Terms Schedule. Lender, on sixty (60) days notice, may require additional guarantors if it determines that its credit risk has increased for any reason. All guarantees shall be pursuant to guaranty agreements acceptable to Lender.

## 3. REPRESENTATIONS AND WARRANTIES

3.1 Organization and Qualification. Dealer is a duly organized and existing entity of the type set forth in Part 3.1 of the Disclosure Schedule. Dealer is in good standing under the laws of the state of its organization, which state is set forth on the Disclosure Schedule. Dealer is in good standing under the laws of said state, has the power to own its property and conduct its business as now conducted and as currently proposed to be conducted, and is duly qualified to do business under the laws of each state where the nature of the business done or property owned requires such qualification. The exact current name and all prior names of Dealer are set forth in Part 3.1 of the Disclosure Schedule. The organization identification number (as that term is used in the Code) and the Federal tax identification number for Dealer is set forth on the Disclosure Schedule. Further, except as set forth on the Disclosure Schedule, Dealer has not been party to any merger, consolidation, or reincorporation or other reorganization. Dealer does not have any subsidiaries nor any investments or ownership interests in any entity except as set forth on the Disclosure Schedule.

3.2 Licenses and Dealership Agreements. Dealer holds all state and local licenses necessary to sell and service new and used Vehicles, in the manner now conducted by it and as is usual and customary of other Vehicle dealers in the state and city or town of its location. Dealer is authorized to sell with full manufacturer's warranties, and to service Vehicles manufactured and/or distributed by the Approved Manufacturer named on the Disclosure Schedule. True copies of all Dealer's licenses and dealership agreements have been delivered to Lender.

3.3 Title to Collateral. Dealer is as of the date hereof (and as to Collateral that Dealer may acquire after the date hereof, will be) the lawful owner of the Collateral, and the Collateral and each item thereof is, will be and shall continue to be free of all restrictions, liens, encumbrances or other rights, title or interests, credits, defenses, recoupments, set-offs or counterclaims whatsoever, other than the security interest therein granted to Lender hereby and (i) those liens set forth on Part 3.3 of the Disclosure Schedule, if any, and (ii) purchase money liens on, and leases of, specific items of equipment. Dealer has not transferred, assigned, sold, pledged, encumbered, subjected to lien or granted any security interest in, and will not transfer, assign, sell (except sales or other dispositions in the Ordinary Course of Business in respect to inventory as expressly permitted in this Agreement), pledge, encumber, subject to lien or grant any security interest in any of the Collateral (or any of Dealer's right, title or interest therein), to any person other than Lender. Dealer will warrant and defend Lender's right to and interest in the Collateral against all claims and demands of all persons whatsoever.

3.4 Places of Business. Dealer's chief executive office and primary place of business is correctly stated in Part 3.4 of the Disclosure Schedule. The Collateral shall be maintained at that location and the other locations, if any, listed on the Disclosure Schedule, and Dealer shall, during the term of this Agreement, keep Lender currently and accurately informed in writing of each of its other places of business, and shall not move any Collateral to any other location

without giving Lender at least thirty (30) days prior written notice thereof, except that so long as no Default shall have occurred, Dealer may move Vehicles to auction lots in connection with the sale thereof in the usual course of Dealer's business, consistent with the practices of other Vehicle dealers.

3.5 Valid Obligations. The execution, delivery and performance of the Loan Documents have been duly authorized by all necessary corporate or other action and each represents a legal, valid and binding obligation of Dealer and is fully enforceable according to its terms, except as limited by laws relating to the enforcement of creditors' rights.

3.6 Conflicts. There is no provision in Dealer's organizational or charter documents, if any, or in any indenture, contract or agreement to which Dealer is a party that prohibits the execution, delivery or performance of the Loan Documents.

3.7 Litigation. There are no civil or criminal actions, suits, proceedings or counterclaims, or any investigations or demands or claims by any Attorney General or other regulatory authority, pending or to the knowledge of Dealer threatened against Dealer or any Guarantor on the date hereof except as set forth in Part 3.7 of the Disclosure Schedule, if any.

3.8 Taxes. Dealer has filed all Federal, state and other tax returns, including sales tax returns required to be filed (except for such returns for which current and valid extensions have been filed), and all taxes, assessments and other governmental charges due from Dealer or with respect to which Dealer is subject to withholding responsibility, have been fully paid. Dealer has established on its books reserves adequate for the payment of all Federal, state and other tax liabilities.

3.9 Information. All financial and other information provided or that will be provided to Lender relating to Dealer and each of its Affiliates is accurate, not misleading, and does not fail to disclose all material facts appropriate for Lender to know Dealer's financial position, business performance, and prospects. Since the effective date of the most recently delivered financial information as to Dealer, there has been no material adverse change in its financial position, prospects, properties or management.

## 4. AFFIRMATIVE COVENANTS

4.1 Books and Records; Inspection. Dealer will at all times keep proper books of account in which full, true and correct entries will be made of its transactions in accordance with generally accepted accounting principles, consistently applied. Dealer will at all reasonable times make its books and records, including electronic records, available in its offices for inspection and examination by Lender and Lender's representatives and at all times, and without notice, will permit inspection of the Collateral and all of its properties by Lender and Lender's representatives. On demand, Dealer shall reimburse Lender for the costs and expenses incurred by Lender in connection with any such audits and inspections.

4.2 Instructions to Vendors. Dealer will and does hereby instruct each person who may from time to time sell Vehicles to Dealer to respond to direct inquiries and requests for information from Lender with respect to any and all matters and transactions involving Dealer. Dealer waives all rights of confidentiality and privacy and instructs its vendors to provide Lender with whatever information and schedules Lender may request.

4.3 Financial Statements. Dealer will deliver to Lender the following reports and other information:

(i) copies of all reports delivered to any Approved Manufacturer concurrently with delivery to such person;

(ii) on Lender's request, annual financial statements of each Guarantor and Dealer prepared by an independent accountant acceptable to Lender, with copies of all letters, footnotes and advice from such accountant, such financial statements to be audited, reviewed or compiled, all as Lender may request, in form and detail satisfactory to Lender;

(iii) annually, no later than fifteen (15) days after filing, a signed copy of each Guarantor's and Dealer's filed federal tax return for the prior year;

(iv) annually, concurrently with the tax return described in clause (iii), a signed personal financial statement of each Guarantor that is an individual, in form and detail satisfactory to Lender; and

(v) from time to time, immediately upon Lender's request, such other financial data and information about Dealer and any Guarantors as Lender may request, in form and detail satisfactory to Lender.

Dealer authorizes Lender to access all Dealer information from any Approved Manufacturer. Dealer also authorizes Lender to communicate directly with Dealer's accountant, and hereby authorizes and requests its accountant to respond to all inquiries and requests from Lender.

4.4 Conduct of Business; Franchises. Dealer shall maintain its existence in good standing and comply with all applicable federal, state and local laws and regulations including those relating to oil, hazardous materials, environmental, labor and employment, and equal credit opportunity. Dealer will maintain all licenses, franchises, and authorizations that may be necessary or desirable for it to continue its business operations as now and in the future conducted.

4.5 Taxes. Dealer will promptly pay all real and personal property taxes, assessments and charges and all franchise, income, unemployment, old age benefits, withholding, sales and other taxes assessed against it or payable by it before delinquent; provided that this covenant shall not apply to any tax assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained. Lender may, at its option, from time to time, discharge any taxes, liens or encumbrances on any of the Collateral, and Dealer will pay to Lender on demand all amounts so paid by it.

4.6 Insurance. Dealer now has and will maintain in force casualty insurance on all Collateral against risks customarily insured against by automobile dealers, containing such terms and written by such companies as may be satisfactory to Lender, such insurance to be payable to Lender as its interest may appear in the event of loss and to name Lender as insured pursuant to a standard loss payee clause; no loss shall be adjusted thereunder without Lender's approval; and all such policies shall provide that they may not be canceled without first giving at least thirty (30) days' written notice of cancellation to Lender. In the event that Dealer fails to provide evidence of such insurance, Lender may, at is option, secure such insurance and charge the cost thereof to Dealer, and Dealer shall pay to Lender on demand all amounts so paid by it. At the option of Lender, all insurance proceeds received from any loss or damage to any of the Collateral shall be applied either to the replacement or repair thereof or as a payment on account of the Obligations. From and after the occurrence of an Event of Default, Lender is authorized to

cancel any insurance maintained hereunder and apply any returned or unearned premiums, all of which are hereby assigned to Lender, as a payment on account of the Obligations. Dealer will immediately notify Lender of (i) any loss of or material damage to any Financed Vehicle, and (ii) any (other) loss or damage to, or material diminution in, or any other occurrence that would adversely affect the value of inventory, or other Collateral, excluding only valuation shrinkage resulting from the mere passage of time or general market conditions.

4.7 Notification of Litigation. Dealer will promptly notify Lender in writing (i) of any commenced or threatened litigation in which the amount demanded exceeds seventy five thousand dollars ($75,000), or which, if adversely determined, would or might be materially adverse to the financial condition of Dealer and (ii) of any investigative proceedings of a governmental agency or authority commenced or threatened against any of them, regardless of apparent scope or magnitude, but excluding routine periodic examinations. For purposes of this section, any litigation seeking certification as a class action shall be considered to have possible material adverse effect.

## 5. FINANCIAL COVENANTS

5.1 Financial Covenants. From time to time, Lender may establish financial covenants and performance requirements applicable to Dealer and any Guarantor as it deems appropriate in its sole discretion. Any initial financial covenants and requirements shall be set forth on the Initial Terms Schedule and shall be effective as of the date hereof, and any amended or new covenants and requirements after the date hereof shall be effective upon sixty (60) days notice. All such covenants and requirements shall be deemed a part hereof, breach of which shall constitute an Event of Default. During any period of time in which any financial covenants are in effect, Dealer shall deliver to Lender compliance certificates in such detail and frequency as Lender may request (quarterly unless Lender has requested otherwise). Such compliance certificates shall be signed by Dealer's president, chief financial officer, or other representative acceptable to Lender and shall contain Dealer's calculation of its compliance (or lack of compliance) with all financial covenants then in effect. However, such calculations shall be subject to Lender's review, and all reasonable determinations, exclusions, and adjustments made by Lender shall be conclusive.

## 6. NEGATIVE COVENANTS

6.1 Limitations on Indebtedness. Dealer shall not issue any evidence of indebtedness or create, assume, guarantee, become contingently liable for, or suffer to exist indebtedness other than: (i) indebtedness to Lender, and (ii) indebtedness or liabilities, other than for money borrowed but allowing for ordinary equipment leases and purchase money security interests in equipment other than Vehicles, incurred or arising in the usual course of an automobile dealership business, or (iii) Subordinated Indebtedness to one or more of Dealer's equity owners.

"Subordinated Indebtedness" shall mean indebtedness for borrowed money, the borrowing of which shall have been approved by Lender prior to its incurrence, and which has been subordinated by a subordination agreement approved by Lender and executed and delivered by the holder thereof.

6.2 Sale of Interest, Management Agreements. Dealer shall not permit any sale or transfer of ownership of any interest in Dealer, nor a change in its President or Chief Executive Officer, without Lender's prior written consent, which consent will not be unreasonably withheld. Dealer

shall not enter into any agreement, including a so-called management agreement, under which its operations or management and/or its profits and losses or other risks and/or benefits of operations or ownership thereof are transferred or assigned to another person or entity.

6.3 Loans or Advances. Dealer shall not make any loans or advances to any individual, firm or corporation, including without limitation its officers, employees, or Affiliates; provided, however, that (i) Dealer may make advances to its employees, including its officers, with respect to expenses incurred or to be incurred by such employees in the ordinary course of business which expenses are reimbursable by Dealer, and (ii) Dealer may sell by installment sale contracts and may lease Vehicles in the Ordinary Course of Business, subject to the terms of this Agreement.

6.4 Dividends and Distributions. After Default, Dealer shall not pay any dividends on or make any distribution on account of any stock or other equity interest or redeem, purchase or otherwise acquire, directly or indirectly, any of such equity, except if Dealer is taxed as an S corporation or as a partnership, under the Internal Revenue Code of the United States, then, so long as no Default would result from such distribution, Dealer may distribute to the stockholders, partners, or members, as applicable, of Dealer such amounts as are necessary to pay the tax liability of such persons arising as a result of Dealer's income. After Default, Dealer shall not pay any compensation or fee to any shareholder or other Affiliate, except amounts approved in advance and in writing by Lender.

6.5 Merger, Change of Name. Dealer will not merge or consolidate or be merged or consolidated with or into any other entity without the prior written consent of Lender which consent will not be unreasonably withheld, but may be subject to such review and analysis and to such documentation as Lender determines appropriate. Dealer shall not change its legal name or the state of its organization, without giving Lender at least thirty (30) days' prior written notice thereof.

6.6 Sale of Assets. Dealer shall not sell, lease, or otherwise dispose of any of its assets, except (i) inventory and chattel paper under the terms and conditions hereof, and (ii) for the purpose of replacing machinery, equipment or other tangible personal property that, as a consequence of wear, duplication or obsolescence, is no longer used or necessary in its business, provided that fair consideration is received therefor, and the proceeds thereof, if material and in cash, shall be deposited in the Proceeds Account.

6.7 Other Business. Dealer shall not engage in any business other than the authorized sale and service of new and used Vehicles.

6.8 No Margin Advances. No portion of any Advance is to be used for the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. 221 and 224.

6.9 Overdrafts. Dealer shall not overdraw, or make distribution from, Dealer's operating account (whether with Lender or elsewhere) when there are insufficient collected funds on deposit to pay such distributions.

## 7. DEFAULT

7.1 Default. "Event of Default" shall mean the occurrence of one or more of any of the following events:

EXHIBIT 1-A

(i) Dealer shall fail to timely pay or perform any Advance or other Obligation, hereunder or otherwise, including failure to pay in full and when due any installment of principal or interest, or default under any other Loan Document and in the case of monthly payments of interest, such default shall have continued for three (3) days.

(ii) Without limiting the generality of clause (i) above, the failure of Dealer to hold in trust and pay to Lender the proceeds of the sale or lease of any Financed Vehicle in strict accordance with the terms hereof.

(iii) Default of any obligation for repayment of money borrowed or any material liability, obligation or undertaking of Dealer or any Guarantor to any person other than Lender, which continues uncured beyond any express grace period, unless being contested in good faith with adequate cash reserves held pending outcome.

(iv) Default (after express periods of grace, if any) by Dealer or any Guarantor under this Agreement, any agreement, note, line of credit note, term note, or otherwise, or under any obligations to or agreement with Lender or with any affiliate of Lender, including, but not limited to, obligations under mortgage loans, under swap or other similar rate hedging agreements, and under agreements for the purchase and sale of motor vehicle installment sales contracts.

(v) Failure of any covenant or agreement herein not covered by clauses 7.1(i) or (ii) that continues for seven (7) days after Dealer's knowledge thereof or breach of any financial covenant established under Section 5.1 hereof.

(vi) Any statement, representation or warranty heretofore, now or hereafter made in connection with this Agreement or in any financial statement of Dealer or any Guarantor shall be determined by Lender to have been false in any material respect when made.

(vii) If Dealer or any Guarantor is a corporation, trust, limited liability company or partnership, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on its present business or the appointment of a receiver for its property.

(viii) The death of any individual Guarantor.

(ix) The institution by or against Dealer or any Guarantor of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which Dealer or any Guarantor is alleged to be insolvent or unable to pay its respective debts as they mature, in the case of any such proceedings against Dealer, if not dismissed within sixty (60) days, or the making by Dealer or any Guarantor of an assignment for the benefit of creditors or the granting of a trust mortgage for the benefit of creditors.

(x) The service upon Lender hereof of a writ of attachment or by which Lender is named as trustee of Dealer or of any Guarantor.

(xi) A judgment or judgments for the payment of money shall be rendered against Dealer or Guarantor and any such judgment or shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution.

(xii) Any levy, seizure, attachment, execution or similar process shall be issued or levied on any of the property of Dealer or any Guarantor not removed within thirty (30) days. This 30-day grace period shall not apply to Vehicles.

(xiii) The termination of any guaranty of the Obligations or Lender's receipt of any notice of termination of any such guaranty.

(xiv) Lender shall fail to acquire, or ever cease to maintain, a first priority security interest in all Collateral, including after-acquired property, except as otherwise expressly permitted hereby.

(xv) Any Approved Manufacturer or Dealer shall terminate, give notice of termination of, or intent to terminate, any sales and service agreement, dealership, franchise, or similar agreement between Dealer and any Approved Manufacturer.

(xvi) The occurrence of such a material change in the condition or affairs (financial or otherwise) of Dealer or any Guarantor or other surety for any of the Obligations (a "Condition"), or the occurrence of any event or circumstance such that Lender deems that it is insecure or that the prospects for timely or full payment or performance of any of the Obligations have been or may be impaired.

(xvii) Lender shall reasonably believe that any of the Collateral is in danger of material misuse, loss, seizure or confiscation, or other disposition not authorized hereunder.

7.2 Immediate Demand. If an Event of Default shall occur, at the election of Lender, all Obligations shall become immediately due and payable without notice or demand. The foregoing provision and this Section 7 do not alter Lender's right to demand payment of the Advances and any other Obligations that may be payable on demand.

Lender is hereby authorized, at its election, after an Event of Default, without any further demand or notice except to such extent as notice may be required by applicable law, to take possession and/or sell or otherwise dispose of all or any of the Collateral at public or private sale; and Lender may also exercise any and all other rights and remedies of a secured party under the Code or which are otherwise accorded to it in equity or at law, all as Lender may determine, and such exercise of rights in compliance with the requirements of law will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral. If notice of a sale or other action by Lender is required by applicable law, unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Dealer agrees that ten (10) days' written notice to Dealer shall be sufficient notice; and that to the extent permitted by law, Lender may bid and become purchasers at any such sale, if public, and may purchase at any private sale any of the Collateral that is of a type customarily sold on a recognized market or which is the subject of widely distributed standard price quotations and in either case, may credit bid all or any portion of the Obligations. Any sale (public or private) shall be without warranty and free from any right of redemption, which Dealer shall waive and release after default upon Lender's request therefor, and may be free of any warranties as to the Collateral if Lender shall so decide. No purchaser at any sale (public or private) shall be responsible for the application of the purchase money. Any balance of the net proceeds of sale remaining after paying all Obligations of Dealer to Lender shall be returned to such party as may be legally entitled thereto; and if there is a deficiency, Dealer (and any Guarantors jointly and severally) shall be responsible for the same, with interest. Upon demand by Lender, Dealer shall assemble the Collateral and make it available to Lender at a place designated by Lender that is reasonably convenient to Lender and Dealer.

7.3 Nonexclusive Remedies. All of Lender's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

8. MISCELLANEOUS

8.1 Manufacturer Not Beneficiary. No manufacturer, distributor or supplier or any person (other than Lender and Dealer) may rely on this Agreement or any term or provision hereof.

8.2 Set-Off. Dealer hereby grants to Lender a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from Lender (or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between Lender and Dealer, or any third party acting on Lender's behalf (collectively, the "Lender Affiliates")) to Dealer and any cash, securities, instruments or other property of Dealer in the possession of Lender or any Lender Affiliate, whether for safekeeping or otherwise, or in transit to or from Lender or any Lender Affiliate (regardless of the reason Lender or Lender Affiliate had received the same or whether Lender or Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of Dealer to Lender or any Lender Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of Dealer to Lender or any Lender Affiliate at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral or adequate collateral is then available to Lender or any Lender Affiliate.

8.3 Indemnification. Dealer shall indemnify, defend and hold Lender harmless of and from any claim brought or threatened against Lender by Dealer, any Guarantor, or any other person (as well as from reasonable attorneys' fees and expenses in connection therewith) on account of Lender's relationship with Dealer or any Guarantor (each of which claims may be defended, compromised, settled, or pursued as determined by Lender, with counsel of Lender's choosing, at the expense of Dealer), except for any claim arising out of the gross negligence or willful misconduct of Lender. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Lender in favor of Dealer.

8.4 Costs and Expenses. Dealer shall pay to Lender any and all costs and expenses (including, without limitation, reasonable attorneys' fees, the allocable cost of Lender's internal legal counsel, and disbursements, court costs, litigation and other expenses) incurred or paid by Lender in establishing, maintaining, protecting, interpreting, amending or enforcing any of Lender's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by Lender in preparing the Loan Documents, defending Lender's security interest in, title or right to the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Obligations. Lender may charge any account of Dealer for all such costs and expenses at any time and may deduct the same from any Advance.

8.5 Counterparts Execution. This Agreement may be executed in counterparts, each of which shall be an original, but all of which shall constitute but one agreement. A signature or other authentication delivered by fax or electronic image shall suffice as an original for all purposes on this Agreement and all other Loan Documents.

8.6 Complete Agreement. This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes, all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

8.7 Binding Effect of Agreement. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect until terminated as to future transactions by written notice from either party to the other party of the termination hereof; provided that any such termination shall not release or affect any Collateral in which Lender already has a security interest or any Obligations incurred or rights accrued hereunder prior to the effective date of such notice (as hereinafter defined) of such termination. Notwithstanding any such termination, Lender shall have a security interest in all Collateral to secure the payment and performance of Obligations arising after such termination as a result of commitments or undertakings made or entered into by Lender prior to such termination. Lender may transfer and assign this Agreement and deliver the Collateral to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Agreement and the Collateral. Dealer may not assign or transfer any of its rights or obligations under this Agreement. If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

8.8 Further Assurances. Dealer will from time to time execute and deliver to Lender, and take or cause to be taken, all such other or further action as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Agreement or to comply with applicable statute or law and to facilitate the collection of the Collateral.

8.9 Amendments and Waivers. This Agreement may be amended only by a writing signed by the parties. No delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver of any right or remedy of Lender on any future occasion.

8.10 Terms of Agreement. This Agreement shall continue in full force and effect so long as any Obligations or obligation of Dealer to Lender shall be outstanding, or Lender shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between Dealer and Lender and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Dealer under any such agreement, nor shall any contemporaneous or subsequent agreement between Dealer and Lender be construed to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Dealer hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

8.11 Notices. Any notice under or pursuant to this Agreement shall be a signed writing or other authenticated record (within the meaning of Article 9 of the Code). If to Lender, such notice shall be sent by nationally recognized overnight courier, mail or delivery service, or sent by first class mail, registered mail, or certified mail, return receipt requested, postage prepaid and

properly addressed, at the following addresses, or at such other addresses as may have been furnished in writing to Dealer by Lender:

Santander Bank, N.A.

75 State Street

Boston, MA 02109

Attention: Auto Dealer Finance

Notwithstanding anything to the contrary set forth in the Loan Documents, a notice delivered by Dealer to the Lender or Lender's designated servicer by electronic mail ("email") or fax will not be deemed effective as notice under this Agreement as to the Lender even if the communication is actually received by its intended recipient.

If to Dealer, such notice shall be hand delivered, or sent by fax or email, or sent by nationally recognized overnight courier, mail or delivery service, or sent by first class mail, registered mail, or certified mail, return receipt requested, postage prepaid, at the address, email address or fax number set forth in this Agreement including any amendment thereto or in the Disclosure Schedule, or at such other address, email address or fax number as may have been furnished in writing to Lender by Dealer.

Any such notice shall be deemed dully received and effective (i) if sent by fax from Lender to Dealer, upon confirmation of the fax transmission, or (ii) if sent by email from Lender to Dealer, when the recipient acknowledges having received that email by reply email (a "read receipt" shall not constitute an acknowledged receipt for purposes of this Section 8.11), or (iii) if hand delivered to, or received by, any officer or agent of Dealer, upon such delivery or receipt, or (iv) if mailed by registered or certified mail, return receipt requested, postage prepaid, and properly addressed to Dealer or Lender, two (2) Business Days after being so mailed, or (iv) if sent to Dealer or Lender by a nationally recognized overnight courier, mail or delivery service, the Business Day after being so sent.

A party's proper address is that set forth for such party in this Agreement including any amendment thereto or in the Disclosure Schedule or such address as that party may from time to time hereafter designate by notice to the other party.

8.12 Governing Law, Jurisdiction. Any and all matters in dispute between the parties to this Agreement, whether arising from or relating to the agreement itself, or arising from alleged extra-contractual facts prior to, during, or subsequent to the Agreement, including, without limitation, fraud, misrepresentation, negligence or any other alleged tort or violation of the contract, shall be governed by, construed, and enforced in accordance with the laws of New York, regardless of the legal theory upon which such matter is asserted. This Agreement has been accepted by Lender at its office in Boston, Massachusetts, and Advances shall be made and/or approved from such office. Dealer and each Guarantor each irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Boston, Massachusetts, over any suit, action or proceeding arising out of or relating to this Agreement. Each of Dealer and each Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an

EXHIBIT 1-A

inconvenient forum. Each of Dealer and each Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to Dealer's or such Guarantor's address on Lender's records and (ii) by serving the same upon Dealer or such Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Dealer or such Guarantor.

8.13 Reproductions. A signature or other authentication delivered by fax or electronic image shall suffice as an original for all purposes on this Agreement and all other Loan Documents.

8.14 Consent of Lender. Whenever Lender's consent, approval, acceptance, or other action is required under this Agreement or under any Loan Document, except where Lender's decision is expressly stated to be guided by its reasonable judgment or other express standard, Lender's decision whether to so consent, approve, accept, or act will be in the sole and exclusive discretion of Lender, and Lender's decision will be final and conclusive.

8.15 Participation. Dealer agrees that Lender may assign, transfer or negotiate this Agreement and other Loan Documents and in such event all of the provisions of this Agreement and the Loan Documents so assigned shall inure to the benefit of and may be exercised by or on behalf of the assignee, transferee or successor to Lender, and all payments of principal and interest due, and to become due hereunder or under any of the Loan Documents shall not thereafter be subject to any defense, counterclaim or setoff which Dealer or any Guarantor may have against Lender. Dealer also agrees that Lender may sell participations to one or more banks or other entities in all or any portion of Lender's rights hereunder and the Obligations under any of the Loan Documents. Dealer also agrees that Lender may at any time pledge all or any portion of its interest and rights hereunder and/or under any of the Loan Documents to any Federal Reserve Banks organized under the Federal Reserve Act, 12 U.S.C. § 341 et seq. Lender may permit another party to service the Advances and the Obligations generally.

8.16 Patriot Act Notice. Lender hereby notifies Dealer that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (October 26, 2001)), Lender is required to obtain, verify and record information that identifies Dealer, which information includes the name and address of Dealer and other information that will allow Lender to identify Dealer in accordance with such Act.

8.17 Limitation of Liability. Dealer's damages under this Agreement and for all other relations between the parties are expressly limited to the actual dollar amount of Dealer's economic or financial loss, and any claim by Dealer for loss of future profits shall be limited to not more than one (1) year from accrual of the claim for such future profits. In no event will the total amount of damages for which Lender is liable exceed an amount equal to the total interest assessed and actually paid on the Advances and other Obligations in the twelve (12) month period immediately prior to Dealer's claim. Dealer may not assert a claim, and Lender shall not be liable for, punitive, exemplary, consequential, or incidental damages.

8.18 Notification of Other Parties. Lender may, but is not required to, notify Guarantors, sureties, Approved Manufacturers, suppliers, and other third parties of the provisions of this Agreement and Dealer's performance, or failure to perform, pursuant to this Agreement. In the event Dealer or its Affiliate has an inventory credit facility with a lender other than Lender, Dealer irrevocably consents to the disclosure of financial information between Lender and such

EXHIBIT 1-A

other lender, and waives any right of privacy or confidentiality as to such information. Dealer directs such other lender to provide such financial information upon Lender's request.

8.19 Severability. If any part of this Agreement is not valid or enforceable under applicable law, all other parts will remain enforceable.

8.20 Joint and Several. Each of the undersigned Dealers agrees that it is jointly and severally liable to Lender for the payment and performance of all Obligations.

## 9. DEFINITIONS

9.1 Certain Terms. The following definitions apply under this Agreement, including on the Initial Terms Schedule and any subsequent schedule of terms provided by Lender to Dealer. Such definitions shall also apply to these terms as used in any promissory note or other document that refers to this Agreement, unless any such term is otherwise defined in such document.

"Affiliate" means any person or entity that, directly or indirectly, controls, is controlled by, or is under common control with Dealer, or is Dealer.

"Amount Financed" means, with respect to a Vehicle at any time, the principal amount of the Advance made by Lender to finance the purchase or other acquisition thereof or otherwise made with respect to such Vehicle, less any Curtailment Payments made with respect to such Vehicle.

"Approved Manufacturers" are those Vehicle manufacturer(s), distributor(s), or supplier(s), or division(s) thereof, listed on the Initial Terms Schedule attached hereto or otherwise approved and accepted by Lender, so long as Dealer is an authorized seller and servicer of new vehicles made, distributed and/or supplied by such person.

"Approved Auctions" are Adesa, Inc., Manheim, Inc., Avis Budget Car Rental, LLC together with their respective affiliated auctions, each Enterprise Holdings, Inc. subsidiary approved and accepted by Lender, and such other Used Vehicle seller otherwise approved and accepted by Lender with respect to Financed Vehicles as may be purchased from time to time by Dealer at auction or other sales between Dealer and such sellers.

"Business Day" means any day other than a Saturday, a Sunday, or a day on which national banks in The Commonwealth of Massachusetts are authorized or required to close.

"Code" means the Uniform Commercial Code as enacted in the state of Dealer's principal business operation, as in effect from time to time.

"Collateral" is defined in Section 2.1 hereof.

"Dealer" is defined in the introductory paragraph hereof.

"Demonstrator" or "Demonstration Vehicle" is a Vehicle manufactured by Chrysler or other original equipment manufacturers and driven by an owner, affiliate, employee or public figure with the purpose of showcasing the Vehicle. A demonstrator may be a New or Used Vehicle and may include a Service Loaner/Shop Rental Vehicle.

"Event of Default" is defined in Section 7.1 hereof; and "Default" means an Event of Default or any condition or event that, with notice or the passage of time, or both, would constitute an Event of Default.

EXHIBIT 1-A

"Financed Vehicle" means a Vehicle, the purchase of which by Dealer, has been financed in whole or in part by an Advance that remains wholly or partially outstanding, or a Vehicle against which Lender has made a specific Advance that remains wholly or partially outstanding. A Vehicle taken in trade as whole or partial consideration for the sale or lease of a Financed Vehicle is a Financed Vehicle, unless and until Lender has received in immediately available funds for the Amount Financed of the sold or leased Vehicle.

"Floorplan Limit" is defined in Section 1.7 hereof.

"Guarantor" means each and every person and entity now or hereafter guaranteeing the whole or partial payment or collection of any Obligation.

"Inventory" has the meaning provided in the Code and includes both Financed Vehicles and non-financed Vehicles and other Inventory.

"Lender" is defined in the introductory paragraph hereof.

"LIBO Rate" means the "London Interbank Offered Rate" ("LIBOR") for the 1-Month Libor Reference Period (the "Interest Period") as quoted in *The Wall Street Journal*, rounded to the nearest 1/100 of 1%. If LIBOR is no longer published in *The Wall Street Journal*, or in the event no such quotation is available on such date, then the LIBOR shall be that rate for an Interest Period at which U.S. dollars are offered by four major banks (the "Reference Banks") in the London Interbank market at approximately 11:00 a.m. London time, on the day that is two (2) Business Days preceding that Interest Period (subject to availability of quotations, as set forth in the first two sentences of this paragraph), to prime banks in the London Interbank market, as determined by Lender, for a period equal to the Libor Reference Period, and in a representative principal amount corresponding to the Note. Lender will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Interest Period will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Interest Period will be the arithmetic mean of the rates quoted by major banks in New York City, selected by Lender, at approximately 11:00 a.m. New York City time, on that date for loans in U.S. dollars to leading European banks for a period equal to the Libor Reference Period, and in a representative principal amount corresponding to the Note. Any interest rate on the Advances or any other Obligation that is determined by reference to LIBO Rate shall be adjusted automatically on and as of the effective date of any change in the LIBOR or monthly as Lender may determine. Until Lender notifies Dealer otherwise, the LIBO Rate will be calculated using the above determined LIBOR quotation published on the first Business Day of each month, and such rate shall be used in the interest computation hereunder for the period from first day through the last calendar day of such month, inclusive. In the event that Lender shall have determined that for whatever reason (i) Lender is unable to ascertain the LIBO Rate, (ii) the LIBO Rate no longer adequately reflects Lender's cost of funding Advances, or (iii) the introduction of, or change in, any law or other rule or regulation makes it unlawful or impractical to charge interest determined by reference to the LIBO Rate; then, immediately upon notice from Lender to Dealer, interest shall accrue at a variable rate tied to the Prime Rate with a margin (the "Substitute Margin") such that as of the date one week prior to the unavailability of the

LIBO Rate, the sum of the LIBO Rate plus the then applicable LIBO Margin would have been equal to the sum of the Prime Rate plus the Substitute Margin. In such circumstance, pricing shall return to LIBO Rate based pricing immediately upon notice from Lender to Dealer.

"Loan Documents" means this Agreement, and each other agreement, guaranty, mortgage, security agreement, account control agreement, note, and other instruments and documents in any way relating to any Advance or any other relationship between the parties or any other Obligation now existing or hereafter executed, and all amendments, addenda, and replacements thereto.

"New Vehicles" are Vehicles manufactured and/or sold and distributed by an Approved Manufacturer held for sale or lease by Dealer for which no title certificate (other than the manufacturer's certificate of origin) has been issued, and which have never been registered.

"Obligations" mean the Advances, and all other present and future indebtedness, obligation and liability that Dealer, any Affiliate of Dealer, or any Guarantor may incur in favor of Lender, whether direct or indirect, absolute or contingent, liquidated or unliquidated, whether as principal obligor or as accommodation party, whether due or to become due, of every nature and kind, in principal, interest, fees, costs, expenses and attorneys' fees, including obligations under interest rate swap agreements and other capital market agreements, under any term note or any line of credit note executed previously, concurrently, or hereafter, and all other indebtedness, obligations, fees, costs and expenses for which Dealer may be responsible under this Agreement and under each Loan Document.

"Ordinary Course of Business" means the types of transactions described in the Code's definition of "Buyer in ordinary course of business," and includes sales and leases of Vehicle Inventory to individuals and business entities at retail, as well as occasional sales and exchanges of Vehicles to or with licensed motor vehicle dealers.

"Program Vehicle" means a Vehicle, other than a New Vehicle, (i) purchased directly from an Approved Manufacturer or at an auction that is held or authorized by an Approved Manufacturer and is open only to Approved Manufacturer's authorized dealers, and (ii) that is less than three (3) model years old.

"Prime Rate" means the rate per annum from time to time established by Lender as its Prime Rate and made available by Lender at its main office or, in the discretion of Lender, the base, reference or other rate then designated by Lender for general commercial loan reference purposes, it being understood that such rate is a reference rate, not necessarily the lowest, established from time to time, which serves as the basis upon which effective interest rates are calculated for loans making reference thereto. Any interest rate on the Advances or any other Obligation that is determined by refrence to the Prime Rate shall be adjusted automatically on and as of the effective date of any change in the Prime Rate (which may be daily).

"Service Loaner/Shop Rental Vehicle" means a Vehicle manufactured by Chrysler or other original equipment manufacturers and held by the dealership with the intention of lending to customers who have cars in the dealership shop or are awaiting the arrival of a

purchased vehicle. A Service Loaner/Shop Rental Vehicle may be a New Vehicle or Used Vehicle. A Service Loaner/Shop Rental Vehicle can be lent out complimentary or a fee may be charged at the discretion of the dealership.

"Used Vehicles" means an original equipment manufactured vehicle that has been titled and is held for sale, including but not limited to, Vehicles not classified as a New Vehicle, Program Vehicle, Demonstration Vehicle or Service Loaner/Shop Rental Vehicle.

"Vehicle" means any vehicle, including automobiles, trucks, motorcycles, trailers, and motor homes permitted to travel over public ways and subject to titling statutes in the state of Dealer's principal location, and includes titled and untitled vehicles, whether or not registered, vehicle inventory held for sale or lease, for short or long term rental or use, or for use in Dealer's business.

9.2 Additional Definitions; Construction. All terms not otherwise defined in this Agreement have the meanings provided in the Code. In this Agreement, singular words include the plural, and the plural words include the singular.

9.3 Non-Business Day Payments. Any payment under any Loan Document due to Lender on a day other than a Business Day shall be paid the next Business Day.

10. CERTAIN WAIVERS

**10.1 JURY WAIVER. DEALER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, ALL LOAN DOCUMENTS, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH, AND ANY AND ALL CAUSES OF ACTION IN ANY WAY RELATING TO ANY MATTER BETWEEN THEM WHETHER ARISING FROM OR RELATING TO THE AGREEMENT ITSELF, OR ARISING FROM ALLEGED EXTRA-CONTRACTUAL FACTS PRIOR TO, DURING, OR SUBSEQUENT TO THE AGREEMENT AND REGARDLESS OF THE LEGAL THEORY UPON WHICH SUCH MATTER IS ASSERTED AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED. DEALER CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

<end of page; the next page is the signature page>

Dealer and Lender hereby agree to the foregoing Floorplan Financing and Security Agreement, and acknowledge all consents and waivers, including the JURY TRIAL WAIVER. Dealer specifically acknowledges that Lender may demand payment of the Advances and/or decline to make Advances at any time for any reason or no reason.

Executed as an instrument under seal as of the date first written above.

**SANTANDER BANK, N.A.**

By: ______________________
Niccolas Mamlaks, duly authorized officer

**EMPYREAN AUTO GROUP LLC**

By: ______________________
Ronald J. Lillard, Member

**BASIN SUBARU, LLC**

By: ______________________
Ronald J. Lillard, Member

**DISCLOSURE SCHEDULE**

**EMPYREAN AUTO GROUP LLC**

1.9 Floorplan Source: NONE

3.1 Exact Name of Dealer: Empyrean Auto Group LLC
d/b/a Corpus Christi Subaru
d/b/a Alfa Romeo Fiat of Corpus Christi
d/b/a Corpus Christi Subaru Pre-Owned
d/b/a Corpus Christi Fiat Pre-Owned
d/b/a Empyrean Auto Group
d/b/a San Antonia Autoplex

Prior Names of Dealer: NONE

State of Organization: Texas

Organization Number: 802442795

Federal Tax Identification Number: 81-2442831

Mergers, Etc.: NONE

Subsidiaries and Investments: NONE

3.2 Approved Manufacturer(s): FCA US LLC (Fiat and Alfa Romeo Brands) and Subaru of America, Inc.

3.3 Other Liens and Equipment Leases and other Leases, if any: NONE

3.4 Primary Place of Business and Collateral Locations, including storage lots: NONE

Location #1: Corpus Christi Subaru

Address: 3615 S. Padre Island Dr., Corpus Christi, TX 78415

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #2: Alfa Romeo Fiat of Corpus Christi

Address: 6210 S. Padre Island Dr., Corpus Christi, TX 78412

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #3: Corpus Christi Subaru Pre-Owned

Address: 4341 S. Staples, Corpus Christi, TX 78411

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #4: Corpus Christi Fiat Pre-Owned

Address: 7202 South Padre Island Dr., Corpus Christi, TX 78412

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #5: Empyrean Auto Group

Address: 779 South Interstate 45, Conroe, TX 77301

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

3.7 Pending or Threatened Litigation: NONE

8.11 Dealer address and email address for notices:

3615 S. Padre Island Dr.
Corpus Christi, TX 78415
rlillard@ccsubaru.com

**DISCLOSURE SCHEDULE**

**BASIN SUBARU, LLC**

1.9 Floorplan Source: NONE

3.1 Exact Name of Dealer: Basin Subaru, LLC
d/b/a Basin Subaru
d/b/a Corpus Christi Subaru
d/b/a Corpus Christi Preowned
d/b/a Basin Mitsubishi
d/b/a Snyder Pre-Owned Center
d/b/a South Conroe Mitsubishi
d/b/a San Angelo Pre-Owned
d/b/a Rapid Finance
d/b/a San Antonio Autoplex
d/b/a Basin Auto Sales
d/b/a Basin Subaru Pre-Owned

Prior Names of Dealer: NONE

State of Organization: Texas

Organization Number: 801174461

Federal Tax Identification Number: 80-0488499

Mergers, Etc.: October 2, 2009 merger between Basin Subaru, LLC and Basin Auto Sales LLC, Basin Subaru, LLC as surviving organization.

Subsidiaries and Investments: NONE

3.2 Approved Manufacturer(s): Subaru of America, Inc. and Mitsubishi Motors North America, Inc.

3.3 Other Liens and Equipment Leases and other Leases, if any:

ADP Commercial Leasing, LLC financing statements #11-0017632263 filed 6/15/2011, #11-0030891891 filed 10/21/2011, #11-0030892660 filed 10/21/2011, and 12-0030769321 filed 9/28/2012.

CIT Finance LLC financing statement #14-0009157178 filed 3/25/2014

Great America Financial Services Corporation financing statements #14-0038436786 filed 12/8/2014, #15-0016893154 filed 5/29/2015

The First National Bank of Beeville financing statement financing statement 15-0022011244 filed 7/13/15

3.4 Primary Place of Business and Collateral Locations, including storage lots:

Location #1: Basin Subaru and Basin Subaru Pre-Owned

Address: 2800 W. Wall St., Midland, TX 79703

Landlord/Property Owner: Basin Auto Sales, LLC

Lease or other terms of occupancy: NONE

Location #2: Basin Subaru

Address: 3917 W. Wall St., Midland, TX 79703

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #3: Basin Mitsubishi

Address: 3915 W. Wall St., Midland, TX 79703

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #4: Basin Auto Sales

Address: 2546 E 8th St., Odessa, TX 79761

Landlord/Property Owner: Ronald J. Lillard and Pete Martinez

Lease or other terms of occupancy: NONE

Location #5: San Angelo Pre-Owned

Address: 1506 N Bryant Blvd., San Angelo, TX 76903

Landlord/Property Owner: PMRL Investments, LLC

Lease or other terms of occupancy: NONE

Location #6: San Antonio Autoplex

Address: 5400 W. Interstate 10, San Antonio, TX 78201

Landlord/Property Owner: Lucas Holdings, LLC

Lease or other terms of occupancy: 12 month lease, expires on August 9, 2018

Location #7:

Address: 3919 W. Wall St., Midland, TX 79703

Landlord/Property Owner: Bain Subaru, LLC

3.7 Pending or Threatened Litigation: NONE

8.11 Dealer address and email address for notices:

2800 W. Wall St.,
Midland, TX 79703

Email address: BasInauto@live.com

**Santander Bank, N.A.**

**Empyrean Auto Group LLC and**
**Basin Subaru, LLC**
Dealer

**FLOORPLAN FINANCING AND SECURITY AGREEMENT**
**Initial Terms Schedule**

10-3, 2017

A. Aggregate Floorplan Limit $23,250,000.00

Sublimits:

Basin Subaru, LLC

| | |
|---|---|
| New Vehicles: | $5,050,000.00 |
| Used Vehicles: | $4,400,000.00 |
| Demonstration Vehicles: | $100,000.00 |
| Service Loaner/Shop Rental Vehicles: | $100,000.00 |

Empyrean Auto Group LLC

| | |
|---|---|
| New Vehicles: | $5,800,000.00 |
| Used Vehicles: | $7,600,000.00 |
| Demonstration Vehicles: | $100,000.00 |
| Service Loaner/Shop Rental Vehicles: | $100,000.00 |

B. Advance Rates

New Vehicles – 100% of the lower of the purchase price for such vehicle as stated in the manufacturer's invoice or Dealer's actual acquisition cost.

Program Vehicles – 100% of Dealer's cost, plus auction costs and fees, if any.

Used Vehicles – the lower of (i) 100% of the cost of such vehicle to Dealer or (ii) 90% of the published wholesale clean value for such vehicle, as set forth in the then applicable Black Book, as published by National Auto Research, assuming good condition, and without regard to add-on equipment. Lender does not intend to advance against Vehicles more than six (6) model years old or having a wholesale value less than $5,000.

C. Interest Rate

LIBO Rate plus 2.05% per annum (such added percentage, the "LIBO Margin"), LIBO Rate shall not be less than .20% per annum.

D. Release Period

- Cash sales/swaps: (i) upon receipt of funds, or (ii) three (3) business days after such cash sale or swap, whichever is earlier.
- Contract sales or leases: (i) three (3) business days after receipt of funds, or (ii) ten (10) business days after such contract sale or lease, whichever is earlier.
- Stolen Vehicles: Proof of an insurance claim and a copy of the police report required; payment upon the earlier of the receipt of funds or sixty (60) days.

E. Curtailment Schedule

(a) As to any Advance for a New Vehicle or a Program Vehicle,

10% of the original outstanding balance monthly beginning 365 days after financing occurred and 10% each month thereafter until the New Vehicle or the Program Vehicle is sold or fully curtailed.

(b) As to any Advance for a Used Vehicle,

No Curtailment Payments due from the period commencing on the date of the original Advance and ending on the last day of the 5th consecutive month after the date of the original Advance.

10% of the original outstanding balance shall be due and payable each consecutive month thereafter (i.e., the first Curtailment Payment is due on the 1st day of the 6th month after the date of the original Advance) until the earlier to occur of: (i) the 1st day of the 12th month after the date of the original Advance, or (ii) the date when the Used Vehicle is sold, when the remaining balance shall be paid in full.

For purposes of the above Used Vehicle Curtailment Payments, the 1st month shall be the full or partial month beginning on the date of the Original Advance and ending on the last day of such calendar month.

(c) As to any Advance for a Demonstration Vehicle, or Service Loaner/Shop Rental Vehicle,

2.5% of the original outstanding balance monthly until the Demonstration Vehicle, or Service Loaner/Shop Rental Vehicle is sold or fully curtailed.

All curtailment payments are due on the 1st day of each month.

F. Guarantors: Ronald J. Lillard
Pete Martinez, Jr.

G. Financial Covenants: None, initially.

**LQAS - COLLATERAL**
$0033$02$2945266
ID: EG69323 - 1 SHORT NAME: Empyrean Auto Group LLC and Basin Subaru LLC
LOAN_NUMBER: EG69323 NEW_NOTE_NUMBER:
DOC CODE: CCAP 806-1 DOC: FloorPlan Financing and Security Agreement
USER: N606048 Date: 10/19/2017 01:07:50 PM

# EXHIBIT 1-B

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Corporation Service Company
251 LITTLE FALLS DRIVE
Wilmington, DE 19808
USA

**FILING NUMBER:** 17-0032462005
**FILING DATE:** 09/25/2017 01:27 PM
**DOCUMENT NUMBER:** 763219030001
**FILED:** Texas Secretary of State
**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: **Basin Subaru, LLC**

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 3917 W Wall St | Midland | TX | 79703 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: **Santander Bank, N.A.**

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 75 State Street | Boston | MA | 02109 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
"All assets of debtor whether now owned or hereafter acquired."

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
8433 [136613514]

FILING OFFICE COPY

EXHIBIT 1-B

Logout

CSC CORPORATION SERVICE COMPANY

My Center | Search Center | Filing Center | Document Center | Financial Center | Help Center

Add Note | Existing Searches | Help

**Query Information**

Filing No: 170032462005
Filter: all
Filter: Active Orders

( Get Report PDF ) ( Get Cost Report PDF )
( E-Mail ) ( Get Report Excel ) ( Get Cost Report Excel )
( Select All ) ( Clear All )
( Universal Discontinue )

Welcome Barbara Frick

10/20/2017 : Account #358660
Santander Bank, N.A. - Main Account

Report Designer: Select a Favorite

All | Filings | Searches | Recordings | Notes | 1 Orders

| Order No | Date | Subject | Cost Center | Obligor Number | Jurisdiction | Service | Queue | Company | Account |
|---|---|---|---|---|---|---|---|---|---|
| ( 136613514 ) | 9/25/2017 | Basin Subaru... | 8433 | | TX - (S.O.S.) | UCC Filing | C | Santander Ba... | 358660 |

Order Number: 136613514
Order Created: 9/25/2017 1:52:45 PM
Parent Order:
Status: C
Subject: Basin Subaru, LLC
Filing Date: 9/25/2017
Filing #: 170032462005
Expiration Date: 9/25/2022

Cost Center: 8433
Obligor Number:
Mortgage Type/UCC Status:
Property Address:
Total Order Fee: $14.80
Account Number: 358660
Date Approved: 9/25/2017 1:53:19 PM

Service: UCC Filing
Jurisdiction: Texas (S.O.S.)
Service Fee: $14.80

( Duplicate ) ( Hide )

**Viewable Attachments**

( View All )

( View ) Description: National UCC1
Category: Filings
View Date: 9/25/2017 1:52:52 PM

( View ) Description: Filing Acknowledgement
Category: Filing Acknowledgement
View Date: 9/29/2017 10:24:27 AM

Note: Filing approved by Catherine Senkovich
Note Date: 9/25/2017 1:53:19 PM
User: prodservice
Last Updated:

Note: Delivered to jurisdiction
Note Date: 9/25/2017 2:27:20 PM
User: prodservice
Last Updated:

Note: Acknowledgement Received
Note Date: 9/25/2017 3:37:38 PM
User: prodservice
Last Updated:

Note: Acknowledgement Sent To: Catherine.Senkovich@chryslercapital.us
Note Date: 9/25/2017 3:42:55 PM
User: prodservice
Last Updated:

**Sub-Orders**

| Order Number | Service |
|---|---|
| 136613570 | Corporate Tracking |
| 136613591 | Debtor Tracking |

**Queue Legend**

| | | |
|---|---|---|
| ARWIP - Attachment Received Work In Progress | NEW - New | R - Rejected Returned Unfiled |
| B - Billing | NSTR - Acknowledgment Received Needs Search To Reflect | WCA - Waiting For Client Attachments |
| C - Complete | PCA - Pending Client Approval | WCR - Waiting For Client Response |
| DTJ - Delivered To Jurisdiction | PCA-CP - Pending Client Approval - CP | WIP - Work In Progress |
| | PCQC - Pending Client QC | WRE - Waiting For Recording Evidence |

Copyright © 2017 Corporation Service Company®. All rights reserved. Privacy Policy

The Company | Services & Products | News & Events | Contact Us | Logout

**LQAS - COLLATERAL**
$0033$02$2945606
ID: EG69323 - 1 SHORT NAME: Empyrean Auto Group LLC and Basin Subaru LLC
LOAN_NUMBER: EG69323000EG69323 NEW_NOTE_NUMBER:
DOC CODE: CCAP 806-1 DOC: UCC-1 TX 170032462005 Basin Subaru
USER: N606048 Date: 10/20/2017 08:21:56 AM

# EXHIBIT 1-C

UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Corporation Service Company
251 LITTLE FALLS DRIVE
Wilmington, DE 19808
USA

FILING NUMBER: 17-0032462126
FILING DATE: 09/25/2017 01:27 PM
DOCUMENT NUMBER: 763219080001
FILED: Texas Secretary of State
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
**EMPYREAN AUTO GROUP LLC**

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 3615 South Padre Island Dr | Corpus Christi | TX | 78415 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
**Santander Bank, N.A.**

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 75 State Street | Boston | MA | 02109 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
"All assets of debtor whether now owned or hereafter acquired."

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
8433 [136614102]

FILING OFFICE COPY

EXHIBIT 1-C



Logout

CSC CORPORATION SERVICE COMPANY

My Center | Search Center | Filing Center | Document Center | Financial Center | Help Center

Add Note | Existing Searches | Help

Query Information
Filing No: 170032462126
Filter: all
Filter: Active Orders

( Get Report PDF ) ( Get Cost Report PDF )
( E-Mail ) ( Get Report Excel ) ( Get Cost Report Excel )
( Select All ) ( Clear All )
( Universal Discontinue )

Welcome Barbara Frick
10/20/2017 : Account #358660
Santander Bank, N.A. - Main Account
Report Designer: Select a Favorite

All | Filings | Searches | Recordings | Notes | 1 Orders

| Order No | Date | Subject | Cost Center | Obligor Number | Jurisdiction | Service | Queue | Company | Account |
|---|---|---|---|---|---|---|---|---|---|
| 136614102 | 9/25/2017 | EMPYREAN AUT... | 8433 | | TX - (S.O.S.) | UCC Filing | C | Santander Ba... | 358660 |

Order Number: 136614102
Order Created: 9/25/2017 1:57:22 PM
Parent Order:
Status: C
Subject: EMPYREAN AUTO GROUP LLC
Filing Date: 9/25/2017
Filing #: 170032462126
Expiration Date: 9/25/2022

Cost Center: 8433
Obligor Number:
Mortgage Type/UCC Status:
Property Address:
Total Order Fee: $14.80
Account Number: 358660
Date Approved: 9/25/2017 1:57:54 PM

Service: UCC Filing
Jurisdiction: Texas (S.O.S.)
Service Fee: $14.80

( Duplicate ) ( Hide )

Viewable Attachments

( View All )

( View ) Description: National UCC1
Category: Filings
View Date: 9/25/2017 1:57:30 PM

( View ) Description: Filing Acknowledgement
Category: Filing Acknowledgement
View Date: 9/29/2017 10:27:23 AM

Note: Filing approved by Catherine Senkovich
Note Date: 9/25/2017 1:57:54 PM
User: prodservice
Last Updated:

Note: Delivered to jurisdiction
Note Date: 9/25/2017 2:27:21 PM
User: prodservice
Last Updated:

Note: Acknowledgement Received
Note Date: 9/25/2017 3:37:44 PM
User: prodservice
Last Updated:

Note: Acknowledgement Sent To: Catherine.Senkovich@chryslercapital.us
Note Date: 9/25/2017 3:42:56 PM
User: prodservice
Last Updated:

Sub-Orders

| Order Number | Service |
|---|---|
| 136614116 | Corporate Tracking |
| 136614151 | Debtor Tracking |

Queue Legend

| | | |
|---|---|---|
| ARWIP - Attachment Received Work In Progress | NEW - New | R - Rejected Returned UnFiled |
| B - Billing | NSTR - Acknowledgment Received Needs Search To Reflect | WCA - Waiting For Client Attachments |
| C - Complete | PCA - Pending Client Approval | WCR - Waiting For Client Response |
| DTJ - Delivered To Jurisdiction | PCA-CP - Pending Client Approval - CP | WIP - Work In Progress |
| | PCQC - Pending Client QC | WRE - Waiting For Recording Evidence |

Copyright © 2017 Corporation Service Company®. All rights reserved. Privacy Policy

The Company | Services & Products | News & Events | Contact Us | Logout

EXHIBIT 1-C

**LQAS - COLLATERAL**
$0033$02$2945599
ID: EG69323 - 1   SHORT NAME: Empyrean Auto Group LLC and Basin Subaru LLC
LOAN_NUMBER: EG69323000EG69323   NEW_NOTE_NUMBER:
DOC CODE: CCAP 806-1     DOC: UCC-1  TX  170032462126 Empyrean Auto Group
USER: N606048   Date: 10/20/2017 08:17:24 AM





EXHIBIT 1-C

# EXHIBIT 1-D



Via UPS Overnight

July 31, 2018

Ronald J. Lillard, Member and Guarantor
Empyrean Auto Group, LLC
3615 Padre Island Drive
Corpus Christi, TX 78415

Pete Martinez, Jr., Member and Guarantor
Basin Subaru, LLC
2800 Wall Street
Midland, TX 79703

Re: Indebtedness of Empyrean Auto Group, LLC and Basin Subaru, LLC (collectively, the "Borrowers") to Santander Bank, N.A. ("Santander")

Gentlemen:

Reference is made to the Floorplan Financing and Security Agreement, dated October 3, 2017 as modified or amended from time to time ("Floorplan Agreement") between the Borrowers and Santander Bank. Capitalized terms used but not defined in this letter are intended to have the meanings set forth in the Floorplan Agreement.

Events of Default have occurred in that, among other defaults, each of the Borrowers has failed to make payments when due. This letter constitutes formal notice to the Borrowers of the occurrence of the Events of Default.

Effective as of the date of this letter, Santander has elected to increase the rate of interest charged on the unpaid principal balance of Advances to the default rate of interest provided for in the Floorplan Agreement, which is 5.00% per annum greater than the otherwise applicable rate (the "Default Interest Rate").

Nothing contained in this letter is intended as a waiver or release of any of the terms or provisions of the Floorplan Agreement or of any and all other agreements between Santander and the Borrowers (the "Loan Documents"). Santander reserves all rights and remedies available to it under the Loan Documents, and applicable law, all of which are expressly hereby reserved. No discussions between Santander and the Borrowers concerning this notification, other loan relationships between Santander and the Borrowers, or any other matter shall imply an agreement on the part of Santander to waive any of its rights and remedies or to forbear from taking any action authorized by the Loan Documents or applicable law, whether or not such discussions may be continuing. Any delay or forbearance by Santander in the enforcement or pursuit of any of its rights and remedies under the Loan Documents or applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of Santander's rights or remedies at a later date.

Sincerely,

Bertin C. Emmons
Senior Counsel

125 Main Street, Salem, NH 03079 Tel 603-328-3064 Fax 484-338-2774 Email bemmons@santander.us

EXHIBIT 1-D

# EXHIBIT 1-E



Via UPS Overnight

August 10, 2018

Ronald J. Lillard, Member and Guarantor
Empyrean Auto Group, LLC
3615 Padre Island Drive
Corpus Christi, TX 78415

Pete Martinez, Jr., Member and Guarantor
Basin Subaru, LLC
2800 Wall Street
Midland, TX 79703

Re: Indebtedness of Empyrean Auto Group, LLC and Basin Subaru, LLC (collectively, the "Borrowers") to Santander Bank, N.A. ("Santander")

Gentlemen:

Reference is made to the Floorplan Financing and Security Agreement, dated October 3, 2017 as modified or amended from time to time ("Floorplan Agreement") between the Borrowers and Santander Bank. Capitalized terms used but not defined in this letter are intended to have the meanings set forth in the Floorplan Agreement.

By a letter dated July 31, 2018, Santander notified the Borrowers that Events of Default had occurred, and reserved all rights arising as a result thereof.

This letter is intended to notify that Borrowers that as a consequence of the occurrence of the Events of Default, Santander has elected to terminate the Borrower's ability to receive Advances. Copies of letters to the Borrowers' motor vehicle manufacturers terminating Santander's commitments to make Advances for the acquisition by the Borrowers of Vehicles are enclosed.

Also as a consequence of the occurrence of the Events of Default, Santander has elected to exercise its option to declare the entire unpaid principal balance of Advances and all accrued and unpaid interest and other charges outstanding under the Floorplan Agreement to be immediately due and payable. As of the date hereof, the aggregate outstanding principal amount of the Advances is $17,895,964.61, interest has accrued in the amount of $148,760.06, and Santander has incurred costs and expenses for which the Borrowers are liable. Demand is hereby made for the immediate payment in full of all amounts which are due and which may become due under the Floorplan Agreement. The balance due may decrease as a result of the receipt of payments and the proceeds of Collateral may increase due to the accrual of interest, late charges, costs of collection and other fees, costs and expenses. Therefore, immediately prior to remitting payment, please contact John P. Bowen, Vice President (508-890-6839 | jbowen@santander.us) to obtain final payoff amounts and remittance instructions.

Nothing contained in this letter is intended as a waiver or release of any of the terms or provisions of the Floorplan Agreement or of any and all other agreements between Santander and the Borrowers (the "Loan Documents"). Santander reserves all rights and remedies available to it under the Loan Documents, and applicable law. No discussions between Santander and the Borrowers concerning this notification, other loan relationships between Santander and the Borrowers, or any other matters shall imply an agreement on the part of Santander to waive any of its rights and remedies or to forbear from taking any action authorized by the Loan Documents or applicable law, whether or not such discussions may be continuing. Any delay or forbearance by Santander in the enforcement or pursuit of any of its rights and remedies under the Loan



Documents or applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of Santander's rights or remedies at a later date.

Sincerely,

Bertin C. Emmons
Senior Counsel

125 Main Street, Salem, NH 03079 Tel 603-328-3064 Fax 484-338-2774 Email bemmons@santander.us

# EXHIBIT 1-F



STEPHANIE HAYES COOK
SENIOR COUNSEL
DIRECT 512-476-1198
EMAIL: scook@cokinoslaw.com

August 20, 2018

*Via U.S. Regular Mail, Email and*
*CMRRR 7018 0360 0001 4841 7712*
rlillard@ccsubaru.com

Ronald J. Lillard, Member and Guarantor
Empyrean Auto Group, LLC
3615 South Padre Island Drive
Corpus Christi, Texas 78415

*Via U.S. Regular Mail, Email and*
*CMRRR 7018 0360 0001 4841 7729*
basinauto@live.com

Pete Martinez, Jr., Member and Guarantor
Basin Subaru, LLC
2800 West Wall Street
Midland, Texas 79703

Re: That certain Floorplan Financing and Security Agreement, dated October 3, 2017, together with all addenda, modifications, and amendments (the "Indebtedness") by and between Empyrean Auto Group, LLC and Basin Subaru, LLC (collectively, "Borrowers") and Santander Bank, N.A. ("Santander")

**NOTICE OF DEFAULT**

Gentlemen:

I represent Santander in connection with the above-described Indebtedness. Please provide me with the contact information for your legal counsel, if retained. On or around July 31, 2018, Santander notified Borrowers in writing of certain Events of Default that had occurred under the Indebtedness, and reserved all rights and remedies in connection with the default. Specifically, Santander notified Borrowers of certain failures to make payments when due. The Events of Default have not been cured as of the date of this letter.

On August 10, 2018, Santander notified Borrowers in writing that based on the Events of Default and failure to cure, Santander had elected to declare the entire Indebtedness due and owing, without waiving any rights or remedies. To date, Borrowers have failed to make payment in full as directed.

In addition to the prior Events of Default, Borrowers have failed to make certain payments for May 2018, and June 2018, as required. Such failure to make payments is an Event of Default under Section 7 of the Indebtedness. Demand is hereby made for payment in full of all outstanding principal, and accrued but unpaid interest, plus costs of collection and fees as permitted by law and the Indebtedness. Please contact John Bowen, Vice President, at 508-890-6839 or jbowen@santander.us to obtain the final payment, and remittance instructions.

Notwithstanding the foregoing, nothing contained in this letter shall be a waiver of any right or remedy, or release of any terms and conditions as contained in the Indebtedness. All rights and remedies are hereby reserved, both at law and in equity. Further, failure to pursue any right or remedy shall not be construed as a waiver or intent to release any right or remedy by Santander, all such rights and remedies are hereby reserved.

Please contact the undersigned counsel at your earliest convenience or direct your legal counsel to contact same to discuss the foregoing.

Sincerely,

CØKINOS | YOUNG

Stephanie H. Cook

SHC/

cc: Bertin C. Emmons – ***bemmons@santander.us***
John P. Bowen, Vice President - ***jbowen@santander.us***

# EXHIBIT 1-G

**UNLIMITED GUARANTY**

TO: Santander Bank, N.A., together with its successors and assigns (the "Lender")

RE: Empyrean Auto Group, LLC (the "Borrower")

Ronald J. Lillard (the "Guarantor")

DATE: 10-3, 2017

To induce you to make, continue to make, or at any time in the future make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by you to or for the account of the Borrower, the undersigned Guarantor absolutely and unconditionally guarantees the full and punctual payment to you of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to you from the Borrower, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by you including attorneys' fees in connection with such obligations, this Unlimited Guaranty (the "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with you. This is a guaranty of payment and not collection.

The Lender may enforce this Guaranty on multiple occasions, each time without the necessity of joinder of any other Guarantors or any other person. This Guaranty shall remain in full force and effect until all obligations of Borrower are unconditionally paid in full.

Guarantor also agrees that:

(1) this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to Guarantor;

(2) the liability of Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring you first to resort to any other right, remedy or security;

(3) Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to you;

(4) the liability of Guarantor is unlimited and joint and several with the liabilities of any other guarantors;

(5) if the Borrower or Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of Guarantor shall be immediately due and payable without notice;

EXHIBIT 1-G

(6) your books and records showing the account between you and the Borrower shall be admissible in any action or proceeding, and shall constitute conclusive proof thereof absent manifest error;

(7) this Guaranty is, as to Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(8) this Guaranty may be terminated as to Guarantor only by giving to Lender ninety (90) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to Guarantor only at the expiration of said ninety (90) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, and also extensions of credit made pursuant to a commitment previously made by you;

(9) the death of Guarantor shall not effect the termination of this Guaranty;

(10) termination of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of Guarantor;

(11) nothing shall discharge or satisfy the liability of Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to you with interest and costs of collection;

(12) this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, Guarantor or any other person obligated to you consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(13) any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to you, and Guarantor shall accept no payments on any such debts and obligations except to the extent permitted by you in writing;

(14) Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender or any of its banking or lending affiliates, any bank acting as a participant under any loan arrangement between the Lender and Guarantor or the Borrower or any third party acting on the Lender's behalf (collectively, the "Lender Affiliates" and for these purposes, Santander Consumer USA, Inc. is deemed a Lender Affiliate) to Guarantor and any property of Guarantor at any time in the Lender's or any Lender Affiliate's possession whether for safekeeping or otherwise, or in transit to or from the Lender or any Lender Affiliate (regardless of the reason the Lender or Lender Affiliate had received the same or whether the Lender or Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender or any Lender Affiliate;

(15) if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by you to the Borrower or to the creditors of the Borrower or any

representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer of conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or Guarantor, or to the creditors of Guarantor or any representative of Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

(16) any rights and remedies available to you under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to you;

(17) your delay or omission in exercising any of your rights and remedies shall not constitute a waiver of these rights and remedies, nor shall your waiver of any right or remedy operate as a waiver of any other right or remedy available to you. Your waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(18) it shall indemnify and hold you and your directors, officers, employees, agents and attorneys harmless against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender, its officers, directors, employees or agents;

(19) this Guaranty incorporates all discussions and negotiations between you and Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by your duly authorized officer;

(20) this Guaranty and all documents which have been or may be hereinafter furnished by Guarantor to you may be reproduced by you by any photographic, electronic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business); and

(21) Guarantor shall deliver to you (i) annually, no later than 15 days after filing, a signed copy of Guarantor's filed federal tax return for the prior year, (ii) annually, concurrently with the tax return described in clause (i), a signed personal financial statement of Guarantor if Guarantor is an individual, in form and detail satisfactory to Lender, and (iii) any other information, documents, and/or records upon request by Lender; and Guarantor represents and warrants the accuracy of any information contained in any of the foregoing.

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type, and any right to exoneration or marshalling. To the extent that s/he lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Lender's rights

under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that he lawfully may do so, Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the internal laws of The State of New York, shall be binding upon the heirs, executors, administrators, successors and assigns of Guarantor and shall inure to the benefit of your successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, or this Guaranty is for any reason not enforceable against any Guarantor, the validity of the remainder of the Guaranty and/or its validity against other Guarantors shall not be affected.

Any and all matters in dispute between the Guarantor and the Lender, whether arising from or relating to this Guaranty itself, or arising from alleged extra-contractual facts prior to, during, or subsequent to this Guaranty, including, without limitation, fraud, misrepresentation, negligence or any other alleged tort or violation of the contract, shall be governed by, construed, and enforced in accordance with the laws of New York, regardless of the legal theory upon which such matter is asserted. This Guaranty has been accepted by Lender at its office in Boston, Massachusetts. Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Boston, Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent he may effectively do so under applicable law, any objection he may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to Guarantor's address on Lender's records and (ii) by serving the same upon Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Guarantor.

Guarantor's damages under this Guaranty and for all other relations between the parties are expressly limited to the actual dollar amount of Guarantor's economic or financial loss. In no event will the total amount of damages for which Lender is liable exceed an amount equal to the total interest assessed and actually paid by Borrower to Lender on floorplan advances and other obligations in the twelve (12) month period immediately prior to Guarantor's claim. For certainty, this limitation shall be read in conjunction with any such limitation found in any other agreements between Lender and Guarantor, Borrower, or any of Borrower's or Guarantor's affiliates, such that the limit stated herein shall be the aggregate maximum amount of damages, rather than a separate limit to be added to the limit(s) found in the other agreements. Guarantor may not assert a claim, and Lender shall not be liable for, punitive, exemplary, consequential, or incidental damages.

This Guaranty is secured by, and entitled to the benefit, inter alia, of any and all collateral previously or hereafter delivered by Guarantor to Lender. Guarantor irrevocably and unconditionally consents to the Lender's entering any premises where any such collateral is situated to remove and/or dispose of such collateral.

Guarantor hereby agrees that a default under any agreement between Borrower and Lender (allowing for express grace periods, if any) shall constitute a default under all agreements between Guarantor and Lender.

To the extent California law applies, Guarantor waives any and all rights and defenses that are, or may become, available to Guarantor pursuant to California Civil Code §2787 through §2856, inclusive, and §3433. Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise. Guarantor waives all rights and defenses that Guarantor may have because any Borrower's Obligations are secured by real property. This means, among other things: (a) Lender may collect from Guarantor hereunder, without first foreclosing on any real or personal property collateral pledged by any Borrower; and (b) if Lender forecloses on any real property collateral pledged by any Borrower, (i) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from any Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because any Borrower's Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

[End of page; the next page is the signature page]

**GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

This Unlimited Guaranty is executed as an instrument under seal as of the date first above written.

Ronald J. Lillard, Individually

**UNLIMITED GUARANTY**

TO: Santander Bank, N.A., together with its successors and assigns (the "Lender")

RE: Basin Subaru, LLC (the "Borrower")

Ronald J. Lillard (the "Guarantor")

DATE: 10-3, 2017

To induce you to make, continue to make, or at any time in the future make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by you to or for the account of the Borrower, the undersigned Guarantor absolutely and unconditionally guarantees the full and punctual payment to you of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to you from the Borrower, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by you including attorneys' fees in connection with such obligations, this Unlimited Guaranty (the "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with you. This is a guaranty of payment and not collection.

The Lender may enforce this Guaranty on multiple occasions, each time without the necessity of joinder of any other Guarantors or any other person. This Guaranty shall remain in full force and effect until all obligations of Borrower are unconditionally paid in full.

Guarantor also agrees that:

(1) this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to Guarantor;

(2) the liability of Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring you first to resort to any other right, remedy or security;

(3) Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to you;

(4) the liability of Guarantor is unlimited and joint and several with the liabilities of any other guarantors;

(5) if the Borrower or Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of Guarantor shall be immediately due and payable without notice;

(6) your books and records showing the account between you and the Borrower shall be admissible in any action or proceeding, and shall constitute conclusive proof thereof absent manifest error;

(7) this Guaranty is, as to Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(8) this Guaranty may be terminated as to Guarantor only by giving to Lender ninety (90) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to Guarantor only at the expiration of said ninety (90) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, and also extensions of credit made pursuant to a commitment previously made by you;

(9) the death of Guarantor shall not effect the termination of this Guaranty;

(10) termination of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of Guarantor;

(11) nothing shall discharge or satisfy the liability of Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to you with interest and costs of collection;

(12) this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, Guarantor or any other person obligated to you consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(13) any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to you, and Guarantor shall accept no payments on any such debts and obligations except to the extent permitted by you in writing;

(14) Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender or any of its banking or lending affiliates, any bank acting as a participant under any loan arrangement between the Lender and Guarantor or the Borrower or any third party acting on the Lender's behalf (collectively, the "Lender Affiliates" and for these purposes, Santander Consumer USA, Inc. is deemed a Lender Affiliate) to Guarantor and any property of Guarantor at any time in the Lender's or any Lender Affiliate's possession whether for safekeeping or otherwise, or in transit to or from the Lender or any Lender Affiliate (regardless of the reason the Lender or Lender Affiliate had received the same or whether the Lender or Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender or any Lender Affiliate;

(15) if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by you to the Borrower or to the creditors of the Borrower or any

representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer of conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or Guarantor, or to the creditors of Guarantor or any representative of Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

(16) any rights and remedies available to you under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to you;

(17) your delay or omission in exercising any of your rights and remedies shall not constitute a waiver of these rights and remedies, nor shall your waiver of any right or remedy operate as a waiver of any other right or remedy available to you. Your waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(18) it shall indemnify and hold you and your directors, officers, employees, agents and attorneys harmless against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender, its officers, directors, employees or agents;

(19) this Guaranty incorporates all discussions and negotiations between you and Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by your duly authorized officer;

(20) this Guaranty and all documents which have been or may be hereinafter furnished by Guarantor to you may be reproduced by you by any photographic, electronic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business); and

(21) Guarantor shall deliver to you (i) annually, no later than 15 days after filing, a signed copy of Guarantor's filed federal tax return for the prior year, (ii) annually, concurrently with the tax return described in clause (i), a signed personal financial statement of Guarantor if Guarantor is an individual, in form and detail satisfactory to Lender, and (iii) any other information, documents, and/or records upon request by Lender; and Guarantor represents and warrants the accuracy of any information contained in any of the foregoing.

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type, and any right to exoneration or marshalling. To the extent that s/he lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Lender's rights

under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that he lawfully may do so, Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the internal laws of The State of New York, shall be binding upon the heirs, executors, administrators, successors and assigns of Guarantor and shall inure to the benefit of your successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, or this Guaranty is for any reason not enforceable against any Guarantor, the validity of the remainder of the Guaranty and/or its validity against other Guarantors shall not be affected.

Any and all matters in dispute between the Guarantor and the Lender, whether arising from or relating to this Guaranty itself, or arising from alleged extra-contractual facts prior to, during, or subsequent to this Guaranty, including, without limitation, fraud, misrepresentation, negligence or any other alleged tort or violation of the contract, shall be governed by, construed, and enforced in accordance with the laws of New York, regardless of the legal theory upon which such matter is asserted. This Guaranty has been accepted by Lender at its office in Boston, Massachusetts. Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Boston, Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent he may effectively do so under applicable law, any objection he may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to Guarantor's address on Lender's records and (ii) by serving the same upon Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Guarantor.

Guarantor's damages under this Guaranty and for all other relations between the parties are expressly limited to the actual dollar amount of Guarantor's economic or financial loss. In no event will the total amount of damages for which Lender is liable exceed an amount equal to the total interest assessed and actually paid by Borrower to Lender on floorplan advances and other obligations in the twelve (12) month period immediately prior to Guarantor's claim. For certainty, this limitation shall be read in conjunction with any such limitation found in any other agreements between Lender and Guarantor, Borrower, or any of Borrower's or Guarantor's affiliates, such that the limit stated herein shall be the aggregate maximum amount of damages, rather than a separate limit to be added to the limit(s) found in the other agreements. Guarantor may not assert a claim, and Lender shall not be liable for, punitive, exemplary, consequential, or incidental damages.

This Guaranty is secured by, and entitled to the benefit, inter alia, of any and all collateral previously or hereafter delivered by Guarantor to Lender. Guarantor irrevocably and unconditionally consents to the Lender's entering any premises where any such collateral is situated to remove and/or dispose of such collateral.

Guarantor hereby agrees that a default under any agreement between Borrower and Lender (allowing for express grace periods, if any) shall constitute a default under all agreements between Guarantor and Lender.

To the extent California law applies, Guarantor waives any and all rights and defenses that are, or may become, available to Guarantor pursuant to California Civil Code §2787 through §2856, inclusive, and §3433. Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise. Guarantor waives all rights and defenses that Guarantor may have because any Borrower's Obligations are secured by real property. This means, among other things: (a) Lender may collect from Guarantor hereunder, without first foreclosing on any real or personal property collateral pledged by any Borrower; and (b) if Lender forecloses on any real property collateral pledged by any Borrower, (i) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from any Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because any Borrower's Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

[End of page; the next page is the signature page]

**GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

This Unlimited Guaranty is executed as an instrument under seal as of the date first above written.

Ronald J. Lillard, individually

**LQAS - COLLATERAL**
$0033$02$2945267
ID: EG69323 - 1 SHORT NAME: Empyrean Auto Group LLC and Basin Subaru LLC
LOAN_NUMBER: EG69323 NEW_NOTE_NUMBER:
DOC CODE: CCAP 806-1 DOC: Unlimited Guaranty Ronald J Lillard
USER: N606048 Date: 10/19/2017 01:08:30 PM

# EXHIBIT 1-H

**UNLIMITED GUARANTY**

TO: Santander Bank, N.A., together with its successors and assigns (the "Lender")

RE: Empyrean Auto Group, LLC (the "Borrower")

Pete Martinez, Jr. (the "Guarantor")

DATE: 10/02, 2017

To induce you to make, continue to make, or at any time in the future make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by you to or for the account of the Borrower, the undersigned Guarantor absolutely and unconditionally guarantees the full and punctual payment to you of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to you from the Borrower, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by you including attorneys' fees in connection with such obligations, this Unlimited Guaranty (the "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with you. This is a guaranty of payment and not collection.

The Lender may enforce this Guaranty on multiple occasions, each time without the necessity of joinder of any other Guarantors or any other person. This Guaranty shall remain in full force and effect until all obligations of Borrower are unconditionally paid in full.

Guarantor also agrees that:

(1) this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to Guarantor;

(2) the liability of Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring you first to resort to any other right, remedy or security;

(3) Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of the Borrower to you;

(4) the liability of Guarantor is unlimited and joint and several with the liabilities of any other guarantors;

(5) if the Borrower or Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of Guarantor shall be immediately due and payable without notice;

(6) your books and records showing the account between you and the Borrower shall be admissible in any action or proceeding, and shall constitute conclusive proof thereof absent manifest error;

(7) this Guaranty is, as to Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(8) this Guaranty may be terminated as to Guarantor only by giving to Lender ninety (90) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to Guarantor only at the expiration of said ninety (90) day period, which shall.then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, and also extensions of credit made pursuant to a commitment previously made by you;

(9) the death of Guarantor shall not effect the termination of this Guaranty;

(10) termination of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of Guarantor;

(11) nothing shall discharge or satisfy the liability of Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to you with interest and costs of collection;

(12) this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, Guarantor or any other person obligated to you consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(13) any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to you, and Guarantor shall accept no payments on any such debts and obligations except to the extent permitted by you in writing;

(14) Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender or any of its banking or lending affiliates, any bank acting as a participant under any loan arrangement between the Lender and Guarantor or the Borrower or any third party acting on the Lender's behalf (collectively, the "Lender Affiliates" and for these purposes, Santander Consumer USA, Inc. is deemed a Lender Affiliate) to Guarantor and any property of Guarantor at any time in the Lender's or any Lender Affiliate's possession whether for safekeeping or otherwise, or in transit to or from the Lender or any Lender Affiliate (regardless of the reason the Lender or Lender Affiliate had received the same or whether the Lender or Lender Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender or any Lender Affiliate;

(15) if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by you to the Borrower or to the creditors of the Borrower or any

representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer of conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or Guarantor, or to the creditors of Guarantor or any representative of Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

(16) any rights and remedies available to you under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to you;

(17) your delay or omission in exercising any of your rights and remedies shall not constitute a waiver of these rights and remedies, nor shall your waiver of any right or remedy operate as a waiver of any other right or remedy available to you. Your waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(18) it shall indemnify and hold you and your directors, officers, employees, agents and attorneys harmless against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender, its officers, directors, employees or agents;

(19) this Guaranty incorporates all discussions and negotiations between you and Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by your duly authorized officer;

(20) this Guaranty and all documents which have been or may be hereinafter furnished by Guarantor to you may be reproduced by you by any photographic, electronic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business); and

(21) Guarantor shall deliver to you (i) annually, no later than 15 days after filing, a signed copy of Guarantor's filed federal tax return for the prior year, (ii) annually, concurrently with the tax return described in clause (i), a signed personal financial statement of Guarantor if Guarantor is an individual, in form and detail satisfactory to Lender, and (iii) any other information, documents, and/or records upon request by Lender; and Guarantor represents and warrants the accuracy of any information contained in any of the foregoing.

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type, and any right to exoneration or marshalling. To the extent that s/he lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Lender's rights

under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that he lawfully may do so, Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto shall be governed, construed and interpreted according to the internal laws of The State of New York, shall be binding upon the heirs, executors, administrators, successors and assigns of Guarantor and shall inure to the benefit of your successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, or this Guaranty is for any reason not enforceable against any Guarantor, the validity of the remainder of the Guaranty and/or its validity against other Guarantors shall not be affected.

Any and all matters in dispute between the Guarantor and the Lender, whether arising from or relating to this Guaranty itself, or arising from alleged extra-contractual facts prior to, during, or subsequent to this Guaranty, including, without limitation, fraud, misrepresentation, negligence or any other alleged tort or violation of the contract, shall be governed by, construed, and enforced in accordance with the laws of New York, regardless of the legal theory upon which such matter is asserted. This Guaranty has been accepted by Lender at its office in Boston, Massachusetts. Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Boston, Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent he may effectively do so under applicable law, any objection he may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to Guarantor's address on Lender's records and (ii) by serving the same upon Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Guarantor.

Guarantor's damages under this Guaranty and for all other relations between the parties are expressly limited to the actual dollar amount of Guarantor's economic or financial loss. In no event will the total amount of damages for which Lender is liable exceed an amount equal to the total interest assessed and actually paid by Borrower to Lender on floorplan advances and other obligations in the twelve (12) month period immediately prior to Guarantor's claim. For certainty, this limitation shall be read in conjunction with any such limitation found in any other agreements between Lender and Guarantor, Borrower, or any of Borrower's or Guarantor's affiliates, such that the limit stated herein shall be the aggregate maximum amount of damages, rather than a separate limit to be added to the limit(s) found in the other agreements. Guarantor may not assert a claim, and Lender shall not be liable for, punitive, exemplary, consequential, or incidental damages.

This Guaranty is secured by, and entitled to the benefit, inter alia, of any and all collateral previously or hereafter delivered by Guarantor to Lender. Guarantor irrevocably and unconditionally consents to the Lender's entering any premises where any such collateral is situated to remove and/or dispose of such collateral.

Guarantor hereby agrees that a default under any agreement between Borrower and Lender (allowing for express grace periods, if any) shall constitute a default under all agreements between Guarantor and Lender.

To the extent California law applies, Guarantor waives any and all rights and defenses that are, or may become, available to Guarantor pursuant to California Civil Code §2787 through §2856, inclusive, and §3433. Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise. Guarantor waives all rights and defenses that Guarantor may have because any Borrower's Obligations are secured by real property. This means, among other things: (a) Lender may collect from Guarantor hereunder, without first foreclosing on any real or personal property collateral pledged by any Borrower; and (b) if Lender forecloses on any real property collateral pledged by any Borrower, (i) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from any Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because any Borrower's Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

[End of page; the next page is the signature page]

**GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

This Unlimited Guaranty is executed as an instrument under seal as of the date first above written.

______________________________
Pete Martinez, Jr., individually